# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

**MANDA RICHARDS**

*on her behalf and on behalf of*
*others similarly situated*

Plaintiff

v.                                                            Case No.: 1:20-cv-01282-ELH

**NEWREZ LLC d/b/a SHELLPOINT**
**MORTGAGE SERVICING**

 Defendant

### PLAINTIFF'S OPPOSITION TO DEFENDANT NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING'S SECOND MOTION TO DISMISS COMPLAINT (ECF. 25)

*/s/ Phillip R. Robinson*
Phillip R. Robinson (Fed. Bar No. 27824)
Consumer Law Center, LLC
8737 Colesville Road, Suite 308
Silver Spring, Maryland 20910
Telephone: 301.448.1304
Email: phillip@marylandconsumer.com
*Counsel for the Plaintiff and Putative Class*
*Members*

May 10, 2021

# Table of Contents

**Page**

I.  **Introduction**                                                                        1

II.  **Summary of Well Pled Facts**                                                         2

III.  **Standard of Review**                                                                3

IV.  **Argument**                                                                           4

    A.  The Court has Already Considered Richard's                         4-5
       Well Pled Claims and Denied Shellpoint's
       Original Motion to Dismiss on each of those
       Claims Presented in Her SAC; Shellpoint
       Should Not Be Permitted to Present a
       Successive Motions to Dismiss which is
       Actually an Untimely and Unauthorized Motion
       to Reconsider Focused on Arguments that were
       Considered or Omitted from its Original Motion
       to Dismiss

    B.  Shellpoint's Repeated, Conclusory Arguments                        7
       to Dismiss Plaintiff's Class Allegations and the
       Out of State Class Members Should be Denied

    C.  Shellpoint Untimely Seeks Reconsideration of                       12
       the Denial of Its Motion to Dismiss  Richard's
       RESPA  Based  Upon  is  Disputed  Factual
       Contentions Not Supported by the SAC

    D.  Plaintiff  Adequately  Alleges  Violations  of                   21
       FDCPA

    E.  Richards has Again Adequately Alleged                              30
       Violations of the MCDCA & MCPA

V.  **Conclusion**                                                                         35

i

# Table of Authorities

**Cases**                                                                **Page**

*Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929
F. Supp. 2d 502 (D. Md. 2013)………………………………  26, 29

*Andrews & Lawrence Pro. Servs., LLC v. Mills*, 223 A.3d 947
(2020)………………………………………………………..  33-34

*Andrus v. Glover Const. Co.*, 446 U.S. 608 (1980)………….  15-16, 19, 33

*AMEX Assur. Co. v. Giordano*, 925 F. Supp. 2d 733 (D. Md.
2013)……………………………………………………………….  4, 24

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………  4

*Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 266
(D. Md. 2015)…………………………………………………  20

*Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1062 (4th
Cir.1984)…………………………………………………….  4

*Baugh v. Fed. Sav. Bank*, 337 F.R.D. 100 (D. Md. 2020)……..  9

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)……………...  4

*Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606 (11th
Cir. 2014)……………………………………………………  32

*Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719 (D.
Md. 2011)……………………………………………………  26, 29

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San
Francisco Cty.*, 137 S. Ct. 1773 (2017)………………………..  8

*Carranza v. Terminix Int'l Co. Ltd. P'ship*, No. 20-CV-1819-
DMS-WVG, 2021 WL 1174732 (S.D. Cal. Mar. 29, 2021)…...  8

*Carlson v. First Revenue Assur.*, 359 F.3d 1015 (8th Cir. 2004)  25

*Chavis v. Blibaum Assocs., P.A.*, 230 A.3d 188 (2020)………..  32

*Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788 (D.
Md. 2013)……………………………………………………  34

# Table of Authorities

**Cases**                                                                                                    **Page**

*In re Dubois*, 834 F.3d 522 (4th Cir. 2016)…………………… 25

*Farber v. Brock & Scott, LLC*, No. CV TDC-16-0117, 2016
WL 5867042 (D. Md. Oct. 6, 2016)…………………………… 25-26, 29

*Fusaro v. Cogan*, 930 F.3d 241 (4th Cir. 2019) ……………… 18

*Hageman v. Barton*, 817 F.3d 611 (8th Cir. 2016)…………… 32

*Harrell v. Freedom Mortg. Corp.,* 976 F.3d 434 (4th Cir.
2020)…………………………………………………………….. 16-18

*Heroman v. Teaching Strategies, LLC*, No. 8:19-CV-2098-
PWG, 2020 WL 6889259 (D. Md. Nov. 24, 2020)…………… 4

*Hillman v. Maretta*, 569 U.S. 483 (2013)…………………….. 16, 19, 24,
33

*Hoffman v. Stamper*, 385 Md. 1 (2005)………………………. 34

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559
U.S. 573 (2010)………………………………………………….. 23

*Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002)…………… 32

*Kemp v. Nationstar Mortg. Ass'n*, 239 A.3d 798 (2020)……… 24, 32

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643 (4th Cir.)…... 10

*Jackson v. Sagal*, 370 F. Supp. 3d 592 (D. Md. 2019)………… 34

*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir.
2010)……………………………………………………………… 25-26, 29

*Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013)………. 25

*Lyngaas v. Ag*, 992 F.3d 412 (6th Cir. 2021)………………….. 8

*Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d
452 (D. Md. 2013)……………………………………………….. 34

# Table of Authorities

**Cases**                                                         **Page**

*Marshall v. CMRE Fin. Servs., Inc.*, No. SACV100668AGMLGX, 2010 WL 11595889 (C.D. Cal. Aug. 2, 2010)…………………………………………………… 23

*Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293 (D.C. Cir. 2020)…………………………………………………… 8

*Morris v. Osmose Wood Preserving*, 340 Md. 519 (1995)……. 34

*MRA Prop. Mgmt. Inc. v. Armstrong*, 426 Md. 83 (2012)…….. 34

*Mussat v. IQVIA, Inc.*, 953 F.3d 441 (7th Cir. 2020)………….. 8

*Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532 (E.D. Va. 2003)…………………………………………………… 16, 19, 33

*In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015)……… 11

*People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, No. 1:17-CV-02148-PX, 2018 WL 5761689 (D. Md. Nov. 1, 2018)………………. 5

*Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492 (D. Md. 1998)…………………………………………………….. 9-10

*Perry v. City of Norfolk*, 194 F.3d 1305 (4th Cir. 1999)……… 11

*Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549 (D. Md. Jan. 22, 2013)……………… 34

*Putnam v. Day*, 89 U.S. 60 (1874)……………………………. 34

*Randolph v. IMBS, Inc.*, 368 F.3d 726 (7th Cir. 2004)……….. 23

<u>*Renfroe v. Nationstar Mortgage, LLC*, 822 F3d. 1241 (11th Cir. 2016)</u>……………………………………………………. 20-21

*Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415 (4th Cir. 2018)…………………………………………… 16, 19, 33

# Table of Authorities

**Cases**                                                                                                           **Page**

*Richards v. NewRez LLC*, No. CV ELH-20-1282, 2021 WL
1060286 (D. Md. Mar. 18, 2021)……………………………..                                             *Passim*

*Robinson v. American Honda Motor Co., Inc.*, 551 F.3d 218,
222 (4th Cir. 2009)………………………………………...                                                 3-4

*Robinson v. Nationstar Mortg. LLC*, No. CV TDC-14-3667,
2019 WL 4261696 (D. Md. Sept. 9, 2019)……………………                                           *9, 11*

*Rowley v. McMillan*, 502 F.2d 1326 (4th Cir. 1974)…………..                                      *passim*

*Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125 (9th Cir.
2016)……………………………………………………………                                                        11

*Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385 (4th
Cir. 2014)………………………………………………………                                                      31

*Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521 (D. Md.
2006)……………………………………………………………                                                     16, 19, 33

*In re Scrimpsher*, 17 B.R. 999 (Bankr. N.D.N.Y. 1982)……….                                     29

*Seidel v. Kirby*, 296 F. Supp. 3d 745 (D. Md. 2017)…………...                                    *passim*

*Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d
754 (D. Md. 2017)………………………………………………..                                                 27

**Statutes**

15 U.S.C.A. § 1692, *et seq.* ("FDCPA")………………………                                           *passim*

15 U.S.C.A. 1692e…………………………………………..                                                    *31*

15 U.S.C.A. 1692f…………………………………………..                                                    *passim*

12 U.S.C.A. § 2605 ("RESPA")……………………………                                                  *passim*

12 U.S.C.A. § 2616……………………………………………                                                  23

Com. Law § 12-121……………………………………………                                                   *24*

# Table of Authorities

**Cases**                                                                                  **Page**

Com. Law § 14-201, *et seq.* ("MCDCA")……………………    *passim*

Com. Law § 202……………………………………    31-32

Com. Law § 13-101, *et seq.* ("MCPA")………………………    *passim*

Com. Law § 13-301…………………………………..    33-34

**Rules**

Fed. R. Civ. P. 1…………………………………….    6

Fed. R. Civ. P. 7…………………………………….    7

Fed. R. Civ. P. 12…………………………………….    5-6

Fed. R. Bankr. P. 3001…………………………………    14

Fed. R. Bankr. P. 4002…………………………………    14

Fed. R. Evid. 201…………………………………    18

Local Rule 105.3………………………………………    8

Local Rule 105.10……………………………………..    *passim*

**Regulations**

12 C.F.R. § 1024.11…………………………………    15

12 C.F.R. § 1024.33…………………………………    15

12 C.F.R. § 1024.35…………………………………    12

12 C.F.R. § 1024.38…………………………………    10

Md. Code Regs. 09.03.06.05…………………………………    10-11

# Table of Authorities

**Cases** **Page**

**Other Authorities**

§ 1385 Application of Rule 12(g)—In General, 5C Fed. Prac. & Proc. Civ. § 1385 (3d ed.)…………………………………….. 5

Bulletin 2020-02—Compliance Bulletin and Policy Guidance: Handling of Information and Documents During Mortgage Servicing Transfers, 85 FR 25281-01…………………………… 15, 27-28

Compliance Bulletin and Policy Guidance—Mortgage Servicing Transfers, 79 FR 63295-01………………………… 15, 27-28

FINANCIAL CONSUMER PROTECTION ACT OF 2018, 2018 Maryland Laws Ch. 731 (H.B. 1634)…………………… 32

Rodney W. HARRELL, Plaintiff-Appellant, v. FREEDOM MORTGAGE CORP., Defendant-Appellee., Amicus *Curiae Brief* of the CFPB, 2019 WL 3543495 (C.A.4)……………… 18-19

U.S. Gen. Accounting Office, Report, Home Ownership—Mortgage Servicing Transfers Are Increasing and Causing Borrower Concern (1989)…………………………………... 27

## I. INTRODUCTION

Plaintiff Manda Richards ("Richards" or "Plaintiff") initiated this action against NewRez, LLC, d/b/a Shellpoint Mortgage Servicing ("Shellpoint" or "Defendant") based on its unfair, deceptive, unconscionable, and otherwise improper collection and servicing of her mortgage loan and the loans of certain other individual persons. Specifically, Plaintiff is pursuing remedial, consumer protections claims under 12 U.S.C.A. § 2605(c)("RESPA"), 15 U.S.C.A. § 1692, *et seq.* ("FDCPA"), and COM. LAW § 14-201, *et seq.* & COM. LAW § 13-101, *et seq.* ("MCDCA/MCPA").

Nearly a year ago Shellpoint removed this action to this Court (ECF. 1) and thereafter moved to dismiss the operative complaint (ECF. 13).  The Court ruled on that initial motion to dismiss and granted in part the relief requested and denied it in part.    ECF. 20-21.  In so ruling, the Court also granted leave to the Plaintiff to amend her pleading.  ECF. 21.  Thereafter, Shellpoint sought and obtained relief from the Court for an "extension of time to file its responsive pleading." ECF. 23.  As permitted by the Court, Richards filed her Second Amended and Supplemental Complaint ("SAC") with the Court for the purposes of: (i) removing the claims asserted by Matthew Maldonado and the COVID-19 Class members whom the Court had dismissed without prejudice as a named party and putative class members (ECF. 20-21); (ii) removing claims dismissed with prejudice related to sending periodic statements (ECF. 20-21); (iii) amending the class allegations (ECF. 20); and (iv) correcting certain misnomers and adding facts that had accrued since the filing of the First Amended Complaint in state court.  *See e.g.* ECF. 24 & 24-1. Richards did not add any new counts to her pleading.

Apparently not satisfied with the Court's ruling on its arguments that were previously raised in its prior motion to dismiss or that could have been raised, Shellpoint elected to continue its motions practice and filed a second 35-page motion to dismiss (ECF. 25-1)("Mem. in Sup. of

Mot." or "Motion") which essentially asks the Court to reconsider its prior decision denying the requested relief. For the same reasons already discussed and briefed before the Court, Shellpoint's Motion should be denied and Richards' remedial claims should be permitted to proceed. It is simply improper for Shellpoint to burden the Court and Richards with repeated arguments, that were previously considered and rejected by the Court, under the guise of an untimely and unauthorized motion to reconsider named as a motion to dismiss.

For the reasons stated herein, Shellpoint's Motion (ECF. 25) should be DENIED.

## II. SUMMARY OF WELL PLED FACTS

Richards bought her subject property in Maryland in 2005 using the subject mortgage (secured by the property) to fund the purchase. SAC at ¶¶ 14, 28. The property was purchased for consumer use and the loan was extended in a consumer transaction. *Id.* Prior to Shellpoint's acquisition of the Richards Loan for servicing, Richards fell behind on her payments and sought the protection of the bankruptcy court, receiving a discharge on October 17, 2017. *Id.* at ¶ 35. Later, Richards sought the protection of the bankruptcy court for a second time and attempted to bring her loan current by participating in a Chapter 13 plan. *Id.* Shellpoint acquired Richards' loan on November 1, 2019, while the loan was in default and in the Chapter 13 bankruptcy plan. *Id.* at ¶¶ 35. Shellpoint knew (or had constructive notice as a matter of public record) that its predecessor BSI routinely transferred inaccurate and incomplete data to its successor servicers. *Id.* at ¶¶ 25, 33-34, 36-37, 40, 43, 49, 51. Despite being aware of its duties as a mortgage servicer – including that it was required to send notice of its servicing acquisition within fifteen days of the transfer – Shellpoint failed to actually transmit this notice until January 22, 2020 – 68 days after the time to do so had expired. *Id.* at ¶ 39. In the interim (i.e., after Shellpoint acquired the loan but before it sent its "Hello Letter" to Richards), Shellpoint began to assess fees and costs to Richards' loan

which it was not permitted to charge because since Shellpoint acquired the loan it failed to send her periodic statements or other notice that such fees were being assessed. *Id.* at ¶¶ 41, 49-50. Each of Shellpoint's actions above violated the Federal and State consumer protection laws discussed *infra*; more specifically Shellpoint unfairly and wrongly attempted to coerce Richards into paying sums she did not owe by furnishing information to credit bureaus in violation of the prior chapter 7 bankruptcy discharge (*id.* at ¶¶ 37, 51); and by accepting but refusing to deposit Richards' post-petition payments to churn additional fees (*id.* at ¶¶46-47). Shellpoint knew how to correspond with Richards at her correct address because it did so on other occasions (*id.* at ¶47, 51). Despite this, it did not timely send its Hello Letter (*id.* at ¶ 39), and continued assessing fees and charges to Richards' loan without sending her any notice (*id.* at ¶¶ 41, 49-50).

Even after this action was commenced and it engaged counsel to act on its behalf, Shellpoint's improper debt collection conduct has continued. *Id.* at ¶¶ 8, 36-37, 51 (describing false credit reporting by Shellpoint to a credit reporting agency and failure of Shellpoint to suppress the derogatory reporting as required by Federal law), ¶ 48 (describing Shellpoint's imposition of property inspection fees onto Richard's account now permitted by Maryland law), ¶¶ 52-64 (describing Shellpoint's bait and switch loan modification practices which imposed an addition sum of $19,791.46 above what was previously offered and agreed based upon its own false and deceptive conduct that only Richard's name needed to be corrected on the loan medication).

Other well-pled facts will be discussed *infra*.

### III. STANDARD OF REVIEW

The Fourth Circuit has explained, "[t]o survive a Rule 12(b)(6) motion to dismiss, the facts alleged 'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Robinson v. American Honda*

*Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)). In *Twombly* the Court considered whether the plaintiff stated "enough facts to state a claim to relief that is plausible on its face," *Twombly, 550 U.S.* at 570, observing that "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 545. However, "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 546. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A court must also view the factual allegations of the complaint "in the light most favorable to plaintiff." *Battlefield Builders, Inc. v. Swango,* 743 F.2d 1060, 1062 (4th Cir.1984).

A Defendant's disputed view of the well-pled facts is not a basis to dismiss an action. *See e.g. AMEX Assur. Co. v. Giordano*, 925 F. Supp. 2d 733, 747 (D. Md. 2013)("disputed fact[s] cannot be resolved on a 12(b)(6) motion to dismiss"); *Heroman v. Teaching Strategies, LLC*, No. 8:19-CV-2098-PWG, 2020 WL 6889259, at *4 (D. Md. Nov. 24, 2020)("If, at the motion to dismiss stage, a court finds that a contract is ambiguous, dismissal is improper because the ambiguity creates a disputed factual issue").

## IV.   ARGUMENT

### A.   THE COURT HAS ALREADY CONSIDERED RICHARD'S WELL PLED CLAIMS AND DENIED SHELLPOINT'S ORIGINAL MOTION TO DISMISS ON EACH OF THOSE CLAIMS PRESENTED IN HER SAC; SHELLPOINT SHOULD NOT BE PERMITTED TO PRESENT A SUCCESSIVE MOTION TO DISMISS WHICH IS ACTUALLY AN UNTIMELY AND

**UNAUTHORIZED MOTION TO RECONSIDER FOCUSED ON ARGUMENTS THAT WERE CONSIDERED OR OMITTED FROM ITS ORIGINAL MOTION TO DISMISS**

Shellpoint is not entitled to repetitively move to dismiss Richard's claims based on arguments it has already raised or could have raised previously and the Court considered and denied the relief requested in a through opinion (ECF. 20).  "[A] party that makes a motion under [Fed. R. Civ. P. 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  Judge Xinis has explained in a similar context:

> Defendants seek to re-litigate whether the ESA is preempted by the Animal Welfare Act and whether the harm to the tigers, as pleaded in the Complaint, is actionable. *Compare* ECF No. 55-1 at 4, 17; *with* ECF No. 15-1 at 5, 12, *and* ECF No. 23 at 15, 19. The Court will not allow Defendants a second bite at the dismissal apple. As a preliminary matter, the Court notes that Rule 12(g) prohibits the refiling of a motion already brought pursuant to Rule 12, absent limited exceptions set forth in Rule 12(h)(2) and (3).

*People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, No. 1:17-CV-02148-PX, 2018 WL 5761689, at *2 (D. Md. Nov. 1, 2018), order clarified on reconsideration, No. 1:17-CV-02148-PX, 2018 WL 6324806 (D. Md. Dec. 3, 2018). *See also* § 1385 Application of Rule 12(g)—In General, 5C Fed. Prac. & Proc. Civ. § 1385 (3d ed.)(FNs omitted).

The Fourth Circuit has also explained previously that

> an amendment to the pleadings permits the responding pleader to assert only such of those defenses which may be presented in a motion under Rule 12 as were not available at the time of his response to the initial pleading. An unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended.

*Rowley v. McMillan*, 502 F.2d 1326, 1333 (4th Cir. 1974).  *See also Seidel v. Kirby*, 296 F. Supp. 3d 745, 749 (D. Md. 2017).

Here, Shellpoint initially moved to dismiss all of Richard's claims in 55 pages of argument and authorities in support of its initial motion to dismiss last year (ECF. 13-1 & 19).  The Court granted and denied that relief and granted Richards leave to amend her pleading (ECF. 20-21). Richards amended her pleading by withdrawing those claims which the Court dismissed with prejudice, withdrawing those claims and certain facts related to her prior co-plaintiff, and adding supplemental facts[1] that accrued after the removal to this Court, but she added no new counts (ECF. 24). Rather than timely move for reconsideration of the Court's prior opinion pursuant to Local Rule 105.10, Shellpoint implicitly asks for a do-over with its current Motion under the pretext of presenting the relief requested as a motion to dismiss when it simply restates arguments that could have been raised or which were raised and were already denied.[2]   Shellpoint is not permitted a second bite at the apple designed simply to improperly tax the Court's and Plaintiff's

---

[1]     Plaintiff does not dispute Shellpoint may generally be entitled to assert a Fed. R. Civ. P. 12(b) motion as to the supplemental facts added to the SAC, but it seems illogical and improper for Shellpoint to move successively to dismiss the original claims reasserted in the SAC which were present in the Plaintiff's prior pleading and the Court already denied Shellpoint's motion to dismiss.  Permitting Shellpoint to file such successive motions under the circumstances of the record in this case and its prior opportunity to dismiss Richard's well pled claims appears improper and counter to Fed. Civ. P. 1.

[2]     *See e.g. Richards v. NewRez LLC*, No. CV ELH-20-1282, 2021 WL 1060286, at *21, *26, *62 (D. Md. Mar. 18, 2021)(*see also* Slip Op. (ECF. 20) at 39, 49, ):

> In sum, I am satisfied that plaintiffs have plausibly alleged concrete, financial injuries in the form of charges and fees under Counts I and II. Therefore, plaintiffs have adequately pleaded Article III standing….

> Accordingly, Shellpoint's alleged pursuit of debt in default on behalf of the owner of the debt is sufficient to qualify Shellpoint as a "debt collector." As a result, dismissal of the FDCPA claim on this ground is not warranted….

> In sum, the Amended Complaint provides defendant with "fair notice of what the…claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. The discovery that will follow will certainly add to defendant's fund of information. Accordingly, I conclude that neither dismissal nor a more definite statement is warranted with respect to Count III.

resources. *Rowley*, 502 F.2d at 1333; *Seidel,* 296 F. Supp. 3d at 749; *PETA*, 2018 WL 5761689. In addition, Shellpoint sought and obtained an extension to file a responsive pleading[3] the Plaintiff's SAC (ECF. 23) and did not seek and obtain any extension of time to file a motion to reconsider more than 14 days after the Court's prior opinion. The time for it to seek the Court's reconsideration under Local Rule 105.10 has passed.

Based on the foregoing the Court should decline Shellpoint's invitation to reconsider the Court's prior decision and DENY its improper Motion.

### B. SHELLPOINT'S REPEATED, CONCLUSORY ARGUMENTS TO DISMISS PLAINTIFF'S CLASS ALLEGATIONS AND THE OUT OF STATE CLASS MEMBERS SHOULD BE DENIED

The Court has not issued any scheduling order and no formal discovery has occurred in the matter whatsoever. Notwithstanding that the case has not proceeded past its early stages, Shellpoint asks the Court to (i) dismiss the out-of-state putative class members and (ii) strike Plaintiff's class allegations. Mem. in Sup. of Mot. 2, 30-35. Previously, the Court considered Shellpoint's out-of-state class member argument and addressed it as follows:

> In my view, defendant's arguments are premature. "It is class certification that brings the unnamed class members into the action and triggers due process limitations on a court's exercise of personal jurisdiction over their claims." *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) (concluding the motion to dismiss putative class members was premature and should be filed after the class is certified); *see Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 249 (5th Cir. 2020) (finding a personal jurisdiction challenge to unnamed class members could not be raised until class certification). The case is at inception, and plaintiffs have not yet brought a motion to certify a nationwide class. Thus, at this juncture, I need not decide the precise "contours of a possible class…" or whether the Court has jurisdiction over Shellpoint with respect to the class claims. *Weisheit*, 2018 WL 1924219, at *5; *see Kadow v. First Federal Bank*, PWG-19-0566, 2020 WL 5230560, at *12 (D. Md. Sept. 2, 2020) ("Issues regarding class certification are properly deferred until such time as the Court determines whether a class will be certified and what the nature of that class will be.").

---

[3]     A pleading is defined under Fed. R. Civ. P. 7(a) and does not include within its meaning a successive motion to dismiss under Fed. R. Civ. P. 12.

*Richards,* 2021 WL 1060286, at \*18.  *See also* Slip Op. (ECF. 20) at 34.

Shellpoint should not be permitted to repetitively raise the same argument or arguments it could have raised before through its untimely motion to reconsider couched as a successive motion to dismiss.  *See* Argument § IV(A) *supra*.[4]  Further, the argument continues to ignore that Plaintiff's putative class claims involve Federal statutory claims that apply equally to residents in Maryland and its sister states and territories.  Thus, the concerns raised in *Bristol-Myers* which involved a mass action with out-of- state plaintiffs litigating in California state courts and not a nationwide class in Federal court based on Federal claims.  The subsequent case law has also rejected Shellpoint's continued effort to expand *Bristol-Myers* to actions like this one involving a Federal class action.  *See e.g. Lyngaas v. Ag*, 992 F.3d 412, 435 (6th Cir. 2021); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020); *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020), <u>cert. denied,</u> 141 S. Ct. 1126 (2021).  *See also Carranza v. Terminix Int'l Co. Ltd. P'ship*, No. 20-CV-1819-DMS-WVG, 2021 WL 1174732, at \*4 (S.D. Cal. Mar. 29, 2021)(collecting cases to support its conclusion "that the holding in *Bristol-Myers* reaches unnamed plaintiffs in a class action brought in federal court alleging claims under federal law").

Also, before any discovery has occurred Shellpoint wishes to continue litigating the proposed class definitions in the SAC.  Previously, "Shellpoint move[d] to strike both proposed class definitions, asserting that they are 'improper fail-safe class definitions' that impermissibly determine membership based on a finding of liability." *Richards*, 2021 WL 1060286, at \*28.  *See*

---

[4]    Shellpoint's Motion is already 35 pages and its argument concerning *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017) incorporates three additional pages from its prior briefing (Mem. in Sup. of Mot. at 35) which means its briefing before the Court has exceeded, without even seeking leave of the Court, the page limits permitted by Local Rule 105.3.  For this additional reason the Court may also deny Shellpoint's Motion.

*also* Slip Op. (ECF. 20) at 53. Now, Shellpoint claims the stated class definitions are overly broad since they are not limited to those persons who received untimely hello notices required under RESPA.  Shellpoint states:

> Plaintiff simply chose to expand the class definitions to include thousands upon thousands of people who do not have claims at all. Plaintiff's alleged classes now include every resident of 18 States and the District of Columbia Shellpoint **did** send a Hello Letter, regardless of what address it was sent to. (SAC ¶¶ 68(a–b)). But identifying the members of these re-defined classes so broadly as to include persons who received Hello Letters at the proper address does not solve the ascertainability problem.

Mem. in Sup. of Mot. 31.

Plaintiff continues to believe it is improper for Shellpoint at this stage of the proceedings to litigate class issues like whether a proposed class is ascertainable without any formal discovery. Further, Shellpoint could have raised this argument in its prior motion to dismiss but failed to do so and instead argues against a narrower, proposed class definition.  ECF. 13-1 at 26-27.  On that basis, is successive argument now should be denied.  *See* Argument § IV(A) *supra*.  Further, Shellpoint's current argument is based on a disputed factual argument that now the proposed class definitions in the SAC is too broad and includes "thousands upon thousands of people who do not have claims at all."  Mem. in Sup. of Mot. 31.[5]  After appropriate discovery and presentation of class certification motions, the Fourth Circuit has rejected such conclusory arguments:

---

[5]     Shellpoint's conclusory and disputed factual argument is not supported by the well pled facts of the SAC which identify that each putative class "exceed[s] more than one hundred persons each."  SAC at ¶ 73.  Further, even if the putative class members include thousands of individuals that does not mean that the classes are not ascertainable or should not be certified pursuant to Fed. R. Civ. P. 23 after the Court is presented with the appropriate motion for class certification based on an actual discovery record.  This court has routinely certified classes of individuals including thousands of consumers under the remedial statutes presented in this action.  *See e.g. Robinson v. Nationstar Mortg. LLC*, No. CV TDC-14-3667, 2019 WL 4261696, at *17 (D. Md. Sept. 9, 2019)(certifying a contested class of more than 33,855 members that also included individuals with no damages who could "'be sorted out at the remedies phase of the suit'")(internal citation omitted); *Baugh v. Fed. Sav. Bank*, 337 F.R.D. 100, 112 (D. Md. 2020)(certifying a contect RESPA

With the statute properly in view, the appellant's challenge to this class falls away. Appellant's core argument seems to be that this class includes a large number of uninjured persons. Other courts to address the question of uninjured plaintiffs have done so through the lens of predominance, asking whether the differences among the class members are so great that individual adjudication subsumes the class-wide issues….For its part, the district court took up the issue through the lens of ascertainability. Regardless of which approach is used, the issue has no bearing on this case. Because the private right of action is not as narrow as Dish and its amici suggest, there is simply not a large number of uninjured persons included within the plaintiffs' class.

With this red herring cast aside, the class certified by the district court easily meets the demands of Rule 23. First, the class members are ascertainable. As we previously explained, class litigation should not move forward when a court cannot identify class members without "extensive and individualized fact-finding or 'mini-trials.' " *EQT Prod. Co.*, 764 F.3d at 358. The goal is not to "identify every class member at the time of certification," *id.*, but to define a class in such a way as to ensure that there will be some "administratively feasible [way] for the court to determine whether a particular individual is a member" at some point. *Id…*

*Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 657–58 (4th Cir.), <u>cert. denied,</u> 140 S. Ct. 676,

205 L. Ed. 2d 440 (2019).

There can be no doubt or dispute that the proposed classes can be identified by Shellpoint's

own business records.  It is required by law and by its license to operate in Maryland and elsewhere

to track and preserve electronic records of its communications with the borrowers it services.  *See*

*e.g.* 12 U.S.C.A. § 2605(K)(1)(E) and 12 C.F.R. § 1024.38(c)(establishing Federal requirements

for Shellpoint to maintain and preserve data on borrower communications and records); MD. CODE

REGS. 09.03.06.05 (requiring Shellpoint as a licensed Maryland mortgage lender (SAC at ¶ 15(b),

16, 23) to maintain electronic data and copies of all required Federal disclosures and "all written

---

kickback-fee involving over a thousand class members); *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 497 (D. Md. 1998)(certifying a contented class "of more than 2,000 individuals" for claims arising under the FDCPA and finding it ascertainable based on notices sent by the defendant to the class members). Also, simply because a class may be large does not mean it should not be certified at the appropriate time.  Respectfully, the point of certifying such a class is to avoid the situation of having hundreds or thousands of RESPA and FDCPA cases clogging the Court's docket when one case can streamline similar claims together.

correspondence between the licensee or its vendors and the borrower").  Assuming *arguendo* that Shellpoint's 'non-damage' argument is accurate after some discovery and evidence presented to the Court, the "non-injury to a subset of class members does not necessarily defeat certification of the entire class, particularly as the district court is well situated to winnow out those non-injured members at the damages phase of the litigation, or to refine the class definition."  *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1137 (9th Cir. 2016).  *See also In re Nexium Antitrust Litig.*, 777 F.3d 9, 25 (1st Cir. 2015)("We think that a certified class may include a de minimis number of potentially uninjured parties"); *Robinson,* 2019 WL 4261696, at *17.

In sum, there is no basis to continue to litigate the class allegations at this preliminary stage when no discovery has occurred whatsoever.  Shellpoint argued previously that it should not face a fail-safe proposed class.  That is exactly what Plaintiff has done in her SAC.  In a neutral manner, the proposed classes can now be identified from Shellpoint's own records and determining who qualifies for that class does not decide, based on a class definition alone, who wins and who loses.  Further, no discovery has occurred and at this preliminary stage when Shellpoint has all the information necessary to identify the proposed class at its electronic finger tips but has not disclosed them in discovery, it simply is not proper to litigate the class issues based on its misleading and fictitious argument alone.  The class definitions can be amended as appropriate (and if necessary) at later stages of this action.  In sum, Richards' class claims should be permitted to proceed at this stage for her to gather "evidence" to properly present her class certification motion.  *Perry v. City of Norfolk*, 194 F.3d 1305 (4th Cir. 1999)("A plaintiff seeking class certification must, at a minimum, produce some type of evidence suggesting that a class exists").

## C. SHELLPOINT UNTIMELY SEEKS RECONSIDERATION OF THE DENIAL OF ITS MOTION TO DISMISS  RICHARD'S RESPA BASED UPON IS DISPUTED FACTUAL CONTENTIONS NOT SUPPORTED BY THE SAC

Previously, in 55 pages of argument Shellpoint moved in part to dismiss Richard's RESPA claims under 12 U.S.C.A. § 2605(c).  *See* ECF. 13-1 & 19.  The Court denied that motion and requested relief and described Richards' RESPA claim as follows:

> Moreover, Shellpoint did not notify Richards of the transfer, as required by 12 U.S.C. § 2605(c) ("Hello Letter"). *Id.* In particular, Richards complains that she did not receive a Hello Letter from Shellpoint until January 22, 2020. *Id.* And, according to plaintiffs, the letter was "materially defective" because it was sent to Richards's former address, where she had not resided for more than a year. *Id.* Further, the notice was dated November 12, 2019, even though it was not delivered to Richards until January 22, 2020—68 days after the time required under 12 U.S.C. § 2605(c). *Id.*

*Richards*, 2021 WL 1060286, at *4(FN omitted).  *See also* Slip Op. (ECF. 20) at 7-8.

Now, Shellpoint wishes to repeat its prior arguments and advance other arguments and disputed factual contentions it could have raised in its original motion to dismiss but did not do so. Mem. in Sup. of Mot. at 2-11 (arguing for dismissal of Richard's RESPA claim based on its belief (i) it could rely on an incorrect mailing address, (ii) Richards had not informed her prior servicer, BSI Financial Services, of her correct mailing address, (iii) it had no notice of her correct mailing address, and (iv) Richards suffered no damages (actual or informational) as a result of Shellpoint's RESPA violation).[6]  Once again, Shellpoint should not be permitted to repetitively raise the same argument or other arguments it could have raised before through its untimely motion to reconsider couched as a successive motion to dismiss.  *See* Argument § IV(A) *supra*.

---

[6]     Richards also pled specific, plausible facts to support an individual claim under RESPA for Shellpoint's failure to suspend derogatory credit reporting to the credit reporting agency known as Experian upon receipt of Richard's written notice on March 18, 2021 pursuant to 12 U.S.C.A. § 2605(e)(3) and 12 C.F.R. § 1024.35(i)(1).  SAC at ¶¶ 8, 37, 65, 84.  Shellpoint did not move to dismiss this claim.

At this same stage of the proceedings this action remains presently (i.e., before any discovery has occurred and based solely upon Plaintiff's well-pled facts), the Court has already addressed certain of these issues:

> Plaintiffs also allege a number of related injuries. They assert they suffered "informational injuries" and "uncertainty and fear" because Shellpoint was "not conveying accurate and timely disclosures and imposing and collecting fees and charges with no proper notice." *Id.* ¶ 55….
>
> I am not persuaded by Shellpoint's arguments that plaintiffs have not sufficiently alleged a traceable injury. At this stage of the litigation, the Court must assume the truth of the allegations in the Amended Complaint. Plaintiffs allege that, as a "direct and proximate result" of Shellpoint's untimely notices, they were damaged by "Shellpoint's imposition and collection of fees." ECF 3, ¶¶ 55, 95. And, the conduct was never disclosed because of the failure of defendant to notify and communicate with plaintiffs. Further, plaintiffs claim that defendant's untimely notices violated Shellpoint's duties under the FDCPA and RESPA. **In other words, plaintiffs have alleged that they suffered injuries as a result of defendant's conduct.** *See Lansdowne*, 713 F.3d at 197; *Cf. Ben-Davies v. Blibaum & Associates, P.A.,* 695 F. App'x 674, 676 (4th Cir. 2017) (finding Art. III standing where complaint alleged that as a "direct consequence" of defendant's alleged "violations of the FDCPA's proscribed practices, she 'suffered and continues to suffer' actually existing intangible harms that affect her personally: 'emotional distress, anger, and frustration.' ").
>
> In sum, I am satisfied that plaintiffs have plausibly alleged concrete, financial injuries in the form of charges and fees under Counts I and II. Therefore, plaintiffs have adequately pleaded Article III standing.

*Richards*, 2021 WL 1060286, at *20–21 (emphasis added). *See also* Slip Op. (ECF 20) at 38-39.

Shellpoint did not timely seek reconsideration of the Court's prior decision on Richard's RESPA claim pursuant to Local Rule 105.10 or even leave to extend its deadline to do so. Its successive motion to dismiss the issue should be denied as improper. *Rowley*, 502 F.2d at 1333; *Seidel,* 296 F. Supp. 3d at 749; *PETA*, 2018 WL 5761689. Further, the well pled facts of the SAC continue to identify to Shellpoint the damages and losses it is on notice she seeks as a result of Shellpoint's failure to comply with RESPA. *See e.g.* SAC at ¶¶ 7, 39, 67, 89.

13

In addition, Shellpoint's remaining theories seeking dismissal of Richard's RESPA claim could have been asserted in its original motion and were not.  Having voluntarily elected not to raise them in the first instance (when it could have done so), Shellpoint simply should not be permitted to argue for dismissal now on alternative legal theories and disputed factual contentions available to it previously but not raised.  *Rowley,* 502 F.2d at 1333; *Seidel,* 296 F. Supp. 3d at 749.

Even if the Court wished to address Shellpoint's belated and disputed factual argument as to whether it had to duty to send its Hello Letter to Richards at her correct mailing address, which it waited nearly year to present to the Court after this action commenced, Shellpoint appears to try to mislead the Court from the actual well pled facts of the SAC and the record known to it. Richards notified Shellpoint's predecessor "BSI and all her other creditors of her change in mailing address" (citing to her Bankruptcy Case and specifically ECF. 35).[7]  SAC at ¶ 35.  Because she and her loan were subject to the ongoing bankruptcy proceedings, Richards was required under Fed. R. Bankr. P. 4002(a)(5) to "file a statement of any change of the debtor's address" and did so.  SAC at ¶ 35; Exhibit 1.  BSI was a party to the bankruptcy case and received the notice through the bankruptcy court's CM/ECF system.  Further, because her bankruptcy case was on-going at the time Shellpoint allegedly acquired the servicing on November 1, 2019 (SAC at ¶ 25), Shellpoint had a duty pursuant to Fed. R. Bankr. P. 3001(e) to notify Richards and the Bankruptcy Court of its interest in the loan and consistent with its pattern it did not timely do so.  SAC at ¶ 45;

---

[7]    *See* Exhibit 1, Notice of Change of Address (ECF. 35) from the Richards Bankruptcy and referenced in the SAC at ¶ 35).  The Court has previously recognized that it may take judicial notice of such public records at this stage of the proceedings.  *Richards,* 2021 WL 1060286, at *10.  *See also* Sip Op. (ECF. 20) at 18.

Exhibit 2, Bankruptcy Docket; Exhibit 3, Claim Register for Richard's Bankruptcy Case (Claim No. 10 related to the subject mortgage).[8]

The timely Hello Letter requirements in 12 U.S.C.A. § 2605(c) do not exempt or exclude from the mandatory notice requirement to borrowers or loans who are subject pending bankruptcy proceedings like Richards and her loan at the time of the servicing transfer.  Neither do the related regulations.  12 C.F.R. § 1024.33.[9]  The Supreme Court has explained in *Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17 (1980) the following:

> Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.

---

[8]      *See* FN 7 *supra* for authority to take judicial notice.  In addition it should be noted that the CFPB issued and published various compliance bulletins over the years identifying its expectations related to Shellpoint (and other mortgage servicers) to comply with RESPA's duties.  *See e.g.* Bulletin 2020-02—Compliance Bulletin and Policy Guidance: Handling of Information and Documents During Mortgage Servicing Transfers, 85 FR 25281-01 (identifying duty of care for Shellpoint to gather information about a borrower's bankruptcy pre-servicing transfer including all bankruptcy documents); Compliance Bulletin and Policy Guidance—Mortgage Servicing Transfers, 79 FR 63295-01 (requiring services like Shellpoint to develop plans when acquiring the servicing rights of large numbers of borrowers including a duty to correct any data or other errors identified in the process).

[9]      Shellpoint relies in part for its argument upon 12 C.F.R. § 1024.11.  *See* Mem. in Sup. of Mot. at 3-4.  This regulation on its face does not apply to Richard's claims since she informed Shellpoint's predecessor and all her other creditors of her updated mailing address in the bankruptcy proceedings.  SAC at ¶ 35.  There is no fact before the Court that BSI did not receive this change of address.  Further, this regulation is focused on "mailing" requirements under certain RESPA provisions but Richard's claim under 12 U.S.C.A. § 2605(c)(1) does not require notification to be made by mail. So the regulation is inapplicable to the actual claim before the Court even if Richards had not notified Shellpoint's predecessor BSI of her new mailing address. Accepting Shellpoint's argument and theory is counter to remedial purpose of RESPA for Shellpoint to give timely notice to Richards and its duties as a transferee servicer to do so.  *See e.g.* citations to CFPB Bulletins in FN 8 *supra*.    Further, if Shellpoint or any other servicer did not have to ensure its notice was sent to the correct mailing address the remedial aim and purpose of 12 U.S.C.A. § 2605(c) would never be met in circumstances like those presented by Richards and lead to an illogical result of non-compliance by Shellpoint of its duty pursuant to § 2605(c)(1).

*Id.  See also Hillman v. Maretta*, 569 U.S. 483, 496 (2013)(applying same to hold States could not create additional exceptions to override the Federal legislation); *Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 431–32 (4th Cir. 2018), cert. denied sub nom. *Waples Mobile Home Park Ltd. P'ship v. de Reyes*, 139 S. Ct. 2026, 204 L. Ed. 2d 218 (2019)("in the absence of a specific exemption from liability for exclusionary practices aimed at illegal immigrants, we must infer that Congress intended to permit disparate-impact liability for policies aimed at illegal immigrants when the policy disparately impacts a protected class, regardless of any correlation between the two"); *Russell v. Cont'l Rest., Inc.*, 430 F. Supp. 2d 521, 527 (D. Md. 2006)("without more evidence of a congressional intent [to do so], this Court will not read exceptions into the [law] not found in the text of the statute"); *Noah v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 532, 539 (E.D. Va. 2003), aff'd, No. 03-1770, 2004 WL 602711 (4th Cir. Mar. 24, 2004)("it is not the role of the federal courts to second-guess a clearly stated Congressional policy decision").

The Fourth Circuit's recent decision in *Harrell v. Freedom Mortg. Corp.,* 976 F.3d 434 (4th Cir. 2020) confirms Richard's reading of RESPA.  While the specific merits dispute in *Harrell* (i.e., a mortgage servicer's duty to timely pay taxes) was different than the specific RESPA violations at issue in this case (i.e., a mortgage servicer's duty to timely send a Hello Letter), the court did address five primary issues and topics that are relevant and material to Shellpoint's new arguments to the Court.

First, *Harrell* recognized, as Richards has argued previously and herein, that RESPA is remedial legislation.

> **Congress gave its new law teeth**. RESPA sanctions certain private rights of action, and it empowers federal and state regulators to enforce its dictates. *See, e.g.*, §§ 2605(f), 2607(d), 2608(b). Congress has since authorized the Consumer Financial Protection Bureau ("CFPB") to administer RESPA by "prescrib[ing] [ ] rules and regulations ... necessary to achieve [RESPA's] purposes." § 2617(a).

16

*Harrell*, 976 F.3d at 437 (emphasis added).

Second, to confirm its analysis of the RESPA issue presented in *Harrell*, the Court considered "[t]The broader statutory structure" of the statute. *Id.* (citing to *Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, ––– U.S. ––––, 138 S. Ct. 883, 894, 200 L.Ed.2d 183 (2018)). Third, in *Harrell,* like this case, the posture was at the motion to dismiss stage. *Id.* at 439. Specifically, the trial court dismissed the plaintiff's complaint on the erroneous legal conclusion that the defendant did not qualify as the responsible mortgage servicer under RESPA. *Id.* The Fourth Circuit rejected the lower court's conclusion and held, at the motions to dismiss stage that the plaintiff had "plausibly alleged that [the defendant] was responsible for servicing his mortgage." *Id.* at 441. The court also explained the correct standard as follows:

> At the motion-to-dismiss stage, we "accept[ ] all well-pleaded allegations in the plaintiff's complaint as true and draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The plaintiff's case may proceed so long as these "facts state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

*Id.* at 439.

Fourth, *Harrell* also found the mandatory statutory provision of RESPA at issue in that case required "[t]he servicer [to]…follow this statutory mandate, *see Holland v. Pardee Coal Co.*, 269 F.3d 424, 431 (4th Cir. 2001) ("shall" is mandatory), or…the borrower[] may seek actual damages, statutory damages, costs, and attorneys' fees. *See* § 2605(f)." *Id.* at 440. Here, the provision that forms the basis of Richard's RESPA claims also places mandatory duties and prohibitions on Shellpoint. 12 U.S.C.A. § 2605(c)(1)(stating "Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred **shall notify the borrower of any such assignment, sale, or transfer**")(emphasis added). By failing to follow the mandatory duties of RESPA a servicer opens itself up to damages as permitted by the statute.

17

12 U.S.C.A. § 2605(f)("**Whoever** fails to comply **with any provision of this section shall be liable to the borrower** for each such failure….")(emphasis assed).

Fifth, the Fourth Circuit in *Harrell* considered, accepted, and applied the arguments of the Amicus *Curiae Brief* of the Consumer Financial Protection Bureau ("CFPB") as the agency now charged with RESPA enforcement.   For additional background on RESPA and its remedial purpose consistent with Richard's claim, the Court may take judicial notice of the CFPB's Amicus Curiae Brief in *Harrell*—especially since the Fourth Circuit adopted the CFPB's arguments in its opinion in *Harrell*.   Fed. R. Evid. 201; *Fusaro v. Cogan*, 930 F.3d 241, 245 & n.1 (4th Cir. 2019) (taking judicial notice during an appeal of documents from another court proceeding).   For example, the CFPB generally described that

> Congress was particularly concerned with ensuring that "mortgage borrowers are properly informed about and protected during the practice of the transfer, sale, and assignment of mortgage servi[ci]ng." H. Rep. No. 101-943, at 510 (1990) (conf. rep.); *see also* 136 Cong. Rec. 21,261--62 (1990) (statement of Rep. LaFalce) (recounting at length the "wide-ranging complaints" from consumers about mortgage servicing transfers, "including escrow accounts being mishandled, taxes and insurance going unpaid, [and] consumers misinformed or uninformed about whom to pay and when"); GAO, Home Ownership: Mortgage Servicing Transfers Are Increasing and Causing *3 Borrower Concern (Nov. 1989) (describing a dramatic increase in servicing transfers and resulting confusion for consumers), *available at* www.gao.gov/assets/220/211839.pdf.

> Accordingly, Section 6 requires servicers to give detailed disclosures to consumers when the right to service a loan is transferred or sold….

> The new measures included requirements that servicers have policies and procedures in place reasonably designed to ensure that they can oversee certain types of entities with whom they contract for assistance in servicing a loan, 12 C.F.R. § 1024.38(b)(3), and to ensure that relevant information and documents concerning a loan are transmitted to a new servicer when servicing rights are transferred, *id*. § 1024.38(b)(4).

Rodney W. HARRELL, Plaintiff-Appellant, v. FREEDOM MORTGAGE CORP., Defendant-Appellee., *Amicus Curiae Brief of the CFPB*, 2019 WL 3543495 (C.A.4), 2-3, 5.   In addition, the

CFPB encouraged the Court to reject the mortgage company's attempt to avoid its duty under RESPA by analogizing to similar attempts by debt collectors under the Fair Debt Collection Practices Act. *Id.* at 21-22.

Just as a debt collector may not avoid the consequences of its violations of the FDCPA by blaming another, so too a mortgage servicer may not avoid its RESPA duties by advancing exclusions not found in the statute and regulations.[10] Amicus *Curiae Brief* of the CFPB, 2019 WL 3543495 at 21-22. *See also Andrus*, 446 U.S. at 616–17; *Hillman,* 569 U.S. at 496; *Reyes*, 903 F.3d at 431–32; *Russell*, 430 F. Supp. 2d at 527; *Noah,* 261 F. Supp. 2d at 539.

In sum, if the servicing of a mortgage is transferred, RESPA requires that the former (transferor) servicer must notify the borrower in writing fifteen days before the effective date of the transfer. 12 U.S.C. § 2605(b)(2)(A). Further, the new (transferee) servicer—i.e., Shellpoint in this case—must provide the identical notice to the borrower not more than fifteen days after the effective date of the transfer. 12 U.S.C. § 2605(c). In addition, the term "effective date of transfer" is defined in the statute to mean the date on which the mortgage payment of the borrower is first due to the new (transferee) servicer, pursuant to the assignment, sale, or transfer of the servicing of the mortgage loan. 12 U.S.C. § 2605(i)(1). Finally, RESPA also requires specific information be contained in the transferee servicer's notice. 12 U.S.C. § 2605(c)(3).

The well pled facts before the Court demonstrate that Shellpoint failed to timely provide any notice to Richards that it had acquired the servicing rights to her loan as required by 12 U.S.C.

---

[10]     To the extent that Shellpoint wishes to cast blame on BSI it certain can attempt to do so but that does not eliminate its own exposure under RESPA as recognized by the Fourth Circuit in *Harrell*. However, the specific pattern and practice evidence in support of Richard's RESPA claim (SAC at ¶ 90) involves borrowers whose loans were transferred from a variety of other servicers and not just BSI which leads to the inference at this stage that no one but Shellpoint is the cause for its failure to comply with its duty under 12 U.S.C.A. § 2605.

§ 2605(c).  SAC at ¶¶ 6, 39.  As a result of Shellpoint's *per se* violations of 12 U.S.C. § 2605(c)(3) (incorporating 12 U.S.C. § 2605(b)(3)), Plaintiff has pled claims pursuant to 12 U.S.C.A. § 2605(f) for the violations which include (i) actual damages (SAC at ¶¶ 7-8, 37, 45-47, 49, 51, 63-67  and (ii) statutory damages (SAC at ¶¶ 7, 67, 99, Prayer for Relief).

In addition, in support of her claims for statutory damages against Shellpoint pursuant to 12 U.S.C.A. § 2605(f), Richards has pled, in addition to her own experiences with the Defendant, public facts related to Shellpoint's "pattern and practice of noncompliance with the requirements of [12 U.S.C.A. § 2605]."   12 U.S.C.A. § 2605(f)(1)(B) and § 2605(f)(2)(B).  Specifically, Plaintiffs identify Shellpoint's violations of § 2605 in relation to them and no less than 3,000 consumer complaints filed against Shellpoint through the Bureau of Consumer Financial Protection; of which no less than fifty involve Shellpoint's pattern and practice of failure to notify borrowers of incoming servicing transfers  in violation of § 2605.  SAC at ¶ 90.

This well-pled pattern and practice sufficiently pleads identifies Richard's right for statutory damages under 12 U.S.C. § 2605.  Judge Quarles explained:

> RESPA, however, also permits plaintiffs to claim statutory damages if a defendant has "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f). Here, the Plaintiffs have alleged that Ocwen continuously failed to respond to their QWRs, and that Ocwen has engaged in similar conduct in the past. *See* Am. Compl. at ¶ 115. These facts are sufficient to allege statutory damages under RESPA. *See Galante v. Ocwen Loan Servicing, LLC,* ELH–13–1939, 2014 WL 3616354, at *34 (D.Md. July 18, 2014) (plaintiffs failed to allege statutory damages under RESPA because they only detailed one QWR).

*Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 266 (D. Md. 2015).  *See also Renfroe v. Nationstar Mortgage, LLC*, 822 F3d. 1241, 1247 (11th Cir. 2016)("Though there is no magic number of violations that create a 'pattern or practice of noncompliance,' courts have held that two violations of RESPA are insufficient to support a claim for statutory damages. *Kapsis v. Am. Home*

*Mortg. Servicing Inc.,* 923 F.Supp.2d 430, 445 (E.D.N.Y.2013). On the other hand, allegations of

five RESPA violations have been deemed adequate to plead statutory damages. *Ploog v. HomeSide*

*Lending, Inc.,* 209 F.Supp.2d 863, 868–69 (N.D.Ill.2002)").

Based on the foregoing, Richards has continued to plausibly plead a claim in her SAC

pursuant to 12 U.S.C.A. § 2605 against Shellpoint for its untimely notices to her (and others) and

she has plausibly identified a pattern and practice of other instances in which Shellpoint has not

timely identified its interest to borrowers for who is services and collects upon their loans.

Shellpoint's successive motion to dismiss Plaintiff's RESPA claims should therefore be DENIED.

### D. PLAINTIFF ADEQUATELY ALLEGES VIOLATIONS OF FDCPA

This Court has already considered Shellpoint's motion to dismiss Richard's FDCPA claims

stated in the SAC and denied the motion except for her FDCPA claims based on Shellpoint's

failure to send periodic statements.[11]  *Richards*, 2021 WL 1060286, at *34.  *See also* Slip Op.

(ECF. 20) at 53. The Court described the remaining claims as follows:

> In particular, plaintiffs complain about Shellpoint's (i) "fail[ure] to timely and
> reasonably identify itself to federally related mortgage borrowers"; (ii) "utilizing
> knowingly incorrect loan data transferred to it without making...any reasonable
> investigation to correct the inaccuracies"; and (iii) "imposing loan charges and fees
> to the borrowers in secret." *Id.*
>
> Further, plaintiffs claim that they were harmed by defendant's (i) "utilization of
> knowingly incorrect loan data obtained by its predecessor(s) servicers while
> imposing and collecting improper fees and charges to the Named Plaintiff's [sic]
> and the putative class members' loan accounts with no proper notice to them; (ii)
> reporting of same derogatory information to the credit reporting agencies while not
> disclosing the information to the borrowers; and (iii) concealment of material loan
> information to Named Plaintiffs and class members." *Id.* ¶ 7. Further, plaintiffs
> contend that Shellpoint "knows that the information transferred to it by its
> predecessor servicers is infected and prone to multiple errors but takes no

---

[11]     Richards did not reallege her original claims under the FDCPA based on Shellpoint's
failure to send periodic statements which the Court dismissed with prejudice.  *See* SAC at Page 1,
FN 2.

reasonable steps to correct those errors but simply compounds the errors by utilizing the flawed data as part of its business practice and routine." *Id.* ¶ 6….

Plaintiffs allege violations of 15 U.S.C. § 1692f, *i.e.*, the "Unfair Practices" section of the FDCPA. Section 1692f states: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The statute provides a list of conduct that violates the section, but it also "allows the court to punish any other unfair or unconscionable conduct not covered by the FDCPA." *Lembach v. Bierman*, 528 F. App'x 297, 303 (4th Cir. 2013).

In particular, plaintiffs contend that Shellpoint violated § 1692f by failing to comply with other statutory and regulatory obligations: 12 U.S.C. § 2605(c); 15 U.S.C. § 1638(f); and/or 12 C.F.R. § 1026.41. According to plaintiffs, Shellpoint violated the FDCPA by failing to provide borrowers, such as plaintiffs, with timely Hello Letters, pursuant to 12 U.S.C. § 2605(c)…and by failing to employ reasonable procedures and practices to ensure the addresses that it uses correspond with those of the borrowers. ECF 3, ¶ 97-104.

*Id.* at *3, *23.

Shellpoint did not timely move to reconsider the Court's prior opinion as required by Local Rule 105.10. Instead it raises a barrage of arguments already considered or those which it could have advanced with its original motion to dismiss but chose not to do so. *Rowley*, 502 F.2d at 1333; *Seidel,* 296 F. Supp. 3d at 749; *PETA*, 2018 WL 5761689. Simply put, the Court may simply elect to deny Shellpoint's requested relief as an improper successive motion to dismiss or untimely motion to reconsider. *See* Argument § IV(A) *supra*.

*Shellpoint presents nothing new in its successive Motion it could not have raised previously before the Court issued its opinion.* Assuming *arguendo* that the Court will consider and permit Shellpoint to repeat arguments (over Richard's objections herein) that were already before the Court and denied or even permit Shellpoint to raise arguments it could have raised before but chose not to do so, Richards responds as follows:

The thrust of Shellpoint's effort to dismiss Richard's FDCPA claims now focuses on: (i) its theory that a violation of RESPA cannot trigger a violation of the FDCPA in any instance or in

the circumstance where RESPA (or its regulations) do not permit a private right of action;[12] (ii) its

conclusory theory, disregarding the actual well pled facts, that Richard's has not stated specific

claims related to Shellpoint's use of infected and inaccurate loan data without adequate procedures

to ensure its accuracy; and (iii) its claim that it may impose fees and charges authorized by the

Deed of Trust (to which it is not a party) in secret without disclosing them to Richards.   Mem. in

Sup. of Mot. at 11-21.

> Congress enacted the FDCPA in 1977, 91 Stat. 874, to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers. 15 U.S.C. § 1692(e). The Act regulates interactions between consumer debtors and "debt collector[s]," defined to include any person who "regularly collects ... debts owed or due or asserted to be owed or due another." §§ 1692a(5), (6). Among other things, the Act prohibits debt collectors from making false representations as to a debt's character, amount, or legal status, § 1692e(2)(A); communicating with consumers at an "unusual time or place" likely to be inconvenient to the consumer, § 1692c(a)(1); or using obscene or profane language or violence or the threat thereof, §§ 1692d(1), (2). See generally §§ 1692b–1692j; *Heintz v. Jenkins,* 514 U.S. 291, 292–293, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995).

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010).

---

[12]    In other words, Shellpoint seems to suggest to the Court that the provisions upon which it relies preempt any claims Richards asserts under the FDCPA.  While it is possible for Congress to intend to preempt one Federal statute over another, there is no evidence it has done so here in the case of RESPA and the FDCPA. *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004)("One federal statute does not preempt another... When two federal statutes address the same subject in different ways, the right question is whether one implicitly repeals the other—and repeal by implication is a rare bird indeed"); *Marshall v. CMRE Fin. Servs., Inc.*, No. SACV100668AGMLGX, 2010 WL 11595889, at *2 (C.D. Cal. Aug. 2, 2010)("Federal statutes do not 'preempt' other federal statutes" and finding that the FCRA does not preempt the Fair Debt Collection Practices Act ("FDCPA")).  Simply put, there is no express preemption between the RESPA and the FDCPA and the only preemption contemplated by Congress related to RESPA is its limited relationship with some state laws and not other federal laws. 12 U.S.C.A. § 2616.  The FDCPA and RESPA should be read together since Congress did not permit one to trump the other.  To suggest otherwise would defeat the remedial purpose of the FDCPA in favor of Shellpoint's unfair and unconscionable collection practices and that result should be avoided.

In this case, Richards asserts two principal FDCPA claims against Shellpoint on her behalf and on behalf of the putative class members.  First, pursuant to 15 U.S.C.A. § 1692f, Richards challenges Shellpoint's "unfair or unconscionable means to collect or attempt to collect any debt" by (i) providing untimely providing notice of its interest in the servicing of Plaintiff's mortgage loans while charging and imposing fees and other charges on her loans (SAC at ¶¶ 6-7, 49, 66); and (ii) alternatively failing to use reasonable procedures and practices to ensure the addresses its utilizes to correspond with borrowers are correct or are even updated when it receives notice from the USPS of non-delivery while continuing to charge fees and other charges (SAC at ¶¶ 6-7, 44, 49, 66, 88, 96).[13]  Second, Richards claims that "[b]y boarding and utilizing knowingly inaccurate loan data into its own systems from its predecessors with no adequate policies, practices, and procedures to make sure the information is reasonably true and correct and then attempting to collect fees and charges accruing before it acquired the servicing of the loan but have never been sought by its predecessors in interest, Shellpoint has also acted unfairly or with unconscionable means to collect or attempt to collect from the Plaintiff and the Untimely Notice Class members in violation of 15 U.S.C. § 1692f."  SAC ¶ 97.  *See also* SAC at ¶¶ 6, 22-26, 33-34, 36-37, 39-40, 43-44, 49, 51, 61-62.

---

[13]  Shellpoint presents a disputed factual argument that the fees and charges it imposed upon Richards and her loan were authorized by her Deed of Trust.  Mem. in Sup. of Mot. at 17-21.  This argument is misplaced.  First, Shellpoint is not a party to the instrument as it is owned by another. SAC at ¶ 15, 31, 93.  Second, even if it were a party to the instrument, the Deed of Trust is subject to all applicable laws including RESPA, the FDCPA, state laws, and judicial decisions and .  ECF. 25-3 at ¶ J & ¶ 14 ("Lender may not charge fees that are expressly prohibited by this Security instrument or by the Applicable Law").  Shellpoint's disputed view of whether it can charge whatever it wishes to charge to a borrower is for the fact-finder to determine at a later stage. *Giordano*, 925 F. Supp. 2d at 747; *Heroman,* 2020 WL 6889259, at *4.  But we do know, accepting the well pled facts of the SAC as true, that Shellpoint imposed fees and charges not authorized by RESPA and Maryland law at times when it was barred from doing so.  *See e.g.* SAC at ¶¶ 27, 48-49.  *Compare* 12 U.S.C.A. § 2605(d); Com. Law § 12-121; *Kemp,* 239 A.3d 798.

> The [FDCPA] prohibits a wide variety of collection tactics…[including] "unfair or unconscionable means to collect or attempt to collect any debt," § 1692f.
>
> Although the FDCPA enumerates specific examples of these broad prohibitions, it does so "[w]ithout limiting [their] general application." Id. For example, "[t]he false representation of ... the character, amount, or legal status of any debt" is a specific violation of the general ban on false, deceptive, or misleading representations. § 1692e(2)(A). But Congress chose not to limit the general prohibitions, to "enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed." Stratton v. Portfolio Recovery Assocs., LLC, 770 F.3d 443, 450 (6th Cir. 2014) (quoting *534 S. Rep. No. 95-382 at 4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1698).

In re Dubois, 834 F.3d 522, 533–34 (4th Cir. 2016).  See also Lembach v. Bierman, 528 F. App'x 297, 304 (4th Cir. 2013) ("…the courts use § 1692f to punish conduct that FDCPA does not specifically cover").

The Eleventh Circuit also explained the meaning of unfairness and unconscionability as follows:

> Aside from the examples of violations provided within Section 1692f, the FDCPA does not purport to define what is meant by "unfair" or "unconscionable." ... The plain meaning of "unfair" is "marked by injustice, partiality, or deception." Significantly, in Jeter, we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair ... if it has the tendency or capacity to deceive." ...The term "unconscionable" means "having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness." ….

LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1200 (11th Cir. 2010)(FN and citations omitted).

A variety of other courts have found that unfair or unconscionable debt collection practices in violation of § 1692f may be based on violations of other statutory duties imposed on the debt collector (which are privately enforceable and not otherwise privately enforceable).  See e.g. Carlson v. First Revenue Assur., 359 F.3d 1015, 1018 (8th Cir. 2004); Farber v. Brock & Scott, LLC, No. CV TDC-16-0117, 2016 WL 5867042, at *6 (D. Md. Oct. 6, 2016)(finding a

violation of RESPA and related state laws without a private right of action its relations related to "the scheduling and advertising of a foreclosure sale at time when there was no legal right to conduct the sale could also violate 15 U.S.C. § 1692f"); *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 529 (D. Md. 2013)(permitting § 1692f claims to proceed at the motion to dismiss stage based on defendant's violation of state licensing laws without a private right of action in relation to its indirect and direct collection activities); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 728-29 (D. Md. 2011)(same).

*LeBlanc* is illustrative of the § 1692f claims presented by the Plaintiff in this action.  The Eleventh Circuit explained:

> Aside from the examples of violations provided within Section 1692f, the FDCPA does not purport to define what is meant by "unfair" or "unconscionable." *See Beler,* 480 F.3d at 474 (With respect to Section 1692f, "[t]he phrase 'unfair or unconscionable' is as vague as they come.") The plain meaning of "unfair" is "marked by injustice, partiality, or deception." Significantly, in *Jeter,* we noted in dictum that in the FTC context, "[a]n act or practice is deceptive or unfair ... if it has the tendency or capacity to deceive." *Jeter,* 760 F.2d at 1172. The term "unconscionable" means "having no conscience"; "unscrupulous"; "showing no regard for conscience"; "affronting the sense of justice, decency, or reasonableness." BLACK'S LAW DICTIONARY 1526 (7th ed.1999).

*LeBlanc*, 601 F.3d at 1200 (FN citation to Merriam–Webster Online Dictionary omitted).

The debt collector in *LeBlanc* argued that its failure to comply with state law in relation to its collection activities "[did] not constitute a 'means' for purposes of LeBlanc's § 1692f claim." *Id.* at 1200. However, the court explained:

> "Means" is defined as "a method, a course of action, or an instrument by which an act can be accomplished or an end achieved." AMERICAN HERITAGE DICTIONARY 1116 (3d ed.1992). The proper inquiry is not whether failure to register [as required under state law] constitutes a "means," but whether [the debt collector's] failure to register makes the chosen means "unfair or unconscionable."

*Id.*

26

Here, as discussed *infra* and as in *LeBlanc*, Richards challenges Defendant's debt collection practices which are unfair or unconscionable since they expressly conflict with the statutory duties imposed upon it under other Federal and State laws and regulations. Neither Congress nor the least sophisticated consumer[14] would anticipate that a professional debt collector like Shellpoint would choose to violate its statutory and legal duties and conceal information required to be conveyed to borrowers while utilizing the means and opportunity to add and collect additional fees and charges to the consumers' bills and accounts. *Compare* U.S. Gen. Accounting Office, Report, Home Ownership—Mortgage Servicing Transfers Are Increasing and Causing Borrower Concern (1989) at Page 5 ("Mortgage servicing transfers can have adverse effects on borrowers. In our review of borrower complaints, we found that disputes can arise over escrow matters, such as large increases in escrow amounts and the servicers' nonpayment of taxes and insurance premiums; difficulty in communicating with new servicers; and the unwarranted assessment of late fees"). *See also* CFPB Compliance Bulletins in FN 8 *supra*.

Shellpoint has a mandatory duty under Federal law to timely disclose to Plaintiff its interest in the mortgage servicing and collection of her loans. *See* Argument § IV(C) *supra*. Here, the well pled facts before the Court now and previously show that as part of its debt collection practices Shellpoint did not provide Richards timely notice of its serving transfer. SAC at ¶ 39. The purpose of the timely notice required under Federal law to ensure that borrowers do not incur fees and charges in secret since serious accounting problems and improper assessments of fees and charges may arise at the time of the servicing transfer. U.S. Gen. Accounting Office, Report, Home

---

[14]   *Smith v. Cohn, Goldberg & Deutsch, LLC*, 296 F. Supp. 3d 754, 759 (D. Md. 2017)("Courts interpret the FDCPA using the least sophisticated consumer standard. This determination requires an objective inquiry, which involves applying a less demanding standard than that of a 'reasonable' consumer….")(FN and citations omitted).

Ownership—Mortgage Servicing Transfers Are Increasing and Causing Borrower Concern (1989) at Page 5. *See also* CFPB Compliance Bulletins in FN 8 *supra*.

Further, there is a wide recognition in the industry that mortgage data exchanged in the new marketplace is inaccurate. SAC at ¶¶ 22-26. *See also* CFPB Compliance Bulletins in FN 8 *supra*. And more specifically, Shellpoint has knowingly acquired and utilized infected and inaccurate loan data in relation to the Richards and others and her well pled SAC identifies specific, non-conclusory examples issues and detailed facts in support of this claim where Shellpoint was aware of the inaccurate, mortgage data utilized by it in servicing/collecting on her loan (and the loans of others) without any regard to investigate and correct the inaccuracies it the data it acquired. SAC at ¶¶ 22-26, 33-34, 36-37, 40, 43, 50-51,  (identifying that Shellpoint's knowledge of the inaccurate mortgage data transferred to it by Richards' prior mortgage servicer).

Shellpoint is a debt collector under the FDCPA in relation to Richards. SAC at ¶¶ 4, 15, 31, 39 93, 95. The Plaintiff is a consumer entitled to protections of the FDCPA. SAC at ¶¶ 14, 28. As summarized *supra*, Shellpoint has utilized "unfair or unconscionable means to collect or attempt to collect any debt" in violation of § 1692f in relation to Plaintiff as a result of its collection practices which provided untimely notice of its interest in the servicing/collection of Plaintiff's mortgage loan while charging and imposing fees and other charges on her loan and causing other damages and losses to her. *See e.g.* SAC at ¶¶ 6, 22-26, 33-34, 36-37, 39-40, 43-44, 49, 51, 61-62, 97.   Richards has therefore stated § 1692f claims against Shellpoint for its unfair or unconscionable means of collection. In other words, Shellpoint's failure to comply with its duties described herein while continuing to impose fees and charges against the mortgage accounts of the Plaintiff is unfair and/or unconscionable. *LeBlanc*, 601 F.3d at 1192; *Farber,* 2016 WL 5867042, at *6; *Ademiluyi,* 929 F. Supp. 2d at 529; *Bradshaw*, 765 F. Supp. 2d at 728-29.

Shellpoint has a duty to convey required information and notice to its borrowers for whose mortgage loans it services and collects.   *See* Argument § IV(C).   However, in relation to the Plaintiff it has demonstrated that it does not utilize reasonable procedures and practices to ensure the addresses its uses to correspond with borrowers are true, correct, or are even updated when it receives notice from the USPS of non-delivery while continuing to charge fees and other charges. SAC at ¶¶ 6, 22-26, 33-34, 36-37, 39-40, 43-44, 49, 51, 61-62, 97.   Failing to employ reasonable procedures to ensure its mandatory notices to the Plaintiff was (i) timely sent at her correct addresses publically available to it or (ii) even update its records through customary practices when it has notice of non-delivery status of the required correspondence while (iii) continuing to impose fees and charges onto the accounts of borrowers is a form of unfair or unconscionable means of collection by Shellpoint in violation of § 1692f.   A debt collector should not be able escape its legal duties under the FDCPA by failing to update borrower addresses in its files so the borrowers have the information they are required to have in relation to their mortgage loans.   In similar instances other courts have found that a debt collector's failure to provide certain information would unlawfully in violation of § 1692f negate the consumer's statutory rights.   *In re Scrimpsher*, 17 B.R. 999, 1014 (Bankr. N.D.N.Y. 1982)("I do find that an omission in the notices' contents transforms the notices to an unfair practice. These notices have no [debt collector] return mailing address. The Debtor has no direct means to contact the [debt collector]. Such a consequence clearly illustrates the implicit necessity for a return address on any debt collector's communications to a consumer").

Based on the foregoing, Richards has continued to plausibly plead claims in her SAC pursuant to the FDCPA against Shellpoint for its unfair and unconscionable debt collection

practices. Shellpoint's successive motion to dismiss Plaintiff's FDCPA claims should therefore be DENIED.

### E. RICHARDS HAS AGAIN ADEQUATELY ALLEGED VIOLATIONS OF THE MCDCA & MCPA

Finally, the Court already considered Shellpoint's original motion to dismiss Richard's individual claims under the MCDCA and MCPA in Count III of her prior pleading which are retained in the SAC.  And the Court denied the motion.

> [T]he Amended Complaint provides defendant with "fair notice of what the…claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555. The discovery that will follow will certainly add to defendant's fund of information. Accordingly, I conclude that neither dismissal nor a more definite statement is warranted with respect to Count III.

*Richards*, 2021 WL 1060286, at *32.  *See also* Slip Op. (ECF. 20) at 62.

Like the other issues and claims addressed *supra*, there is no just basis to permit Shellpoint another bite at the apple to seek to dismiss claims the Court already found to be plausible and it did not timely seek the Court's reconsideration.  *Rowley*, 502 F.2d at 1333; *Seidel,* 296 F. Supp. 3d at 749; *PETA*, 2018 WL 5761689; Local Rule 105.10.   On this basis again the Court may simply deny Shellpoint's latest Motion since it has by and large presented no new argument that it could not have raised in its original motion to dismiss.

Richard's SAC did add certain supplemental facts that were not before the Court previously and accrued after Shellpoint removed this action to this Court which further support Richard's original claims already deemed by the Court to be plausibly stated.  *Richards*, 2021 WL 1060286, at *32. *See also* Slip Op. (ECF. 20) at 62.   Specifically these additional facts include: (i) Shellpoint's continued direct communications with Richards about the mortgage loan even when it knew she was represented by counsel (SAC at ¶¶ 36-37, 48); (ii) Shellpoint's continued, false

derogatory credit reporting (SAC at ¶¶ 7, 37, 51);[15] (iii) Shellpoint's imposition and collection of property inspection fees onto her account in violation of Maryland law (SAC at ¶ 48(d)); and (iv) Shellpoint's bait and switch loan modification practices in which it: (a) offered her and she accepted a loan modification with specific terms and thereafter acted in reliance to those stated terms but (b) Shellpoint's counsel, with Shellpoint's authority, misstated that the modification had to be completed again to correct Shellpoint's error in printing Richard's legal name when in fact Shellpoint materially altered and increased the terms of the agreed upon loan terms by a sum of no less than $19,791 (SAC at ¶¶ 52-65).  These additional facts simply support Richard's original MCDCA and MCPA claims (as well as her individual RESPA and FDCPA claims).  Further, these facts are detailed and give Shellpoint fair notice upon which it may conduct discovery—especially since certain of the claims involve the representations of its own counsel in non-privileged communications (SAC at ¶¶ 60-64).  *Richards*, 2021 WL 1060286, at *32.  *See also* Slip Op. (ECF. 20) at 62.

It is true as identified by Shellpoint that there is a split of authority over some claims which may be subject to a MCDCA claim pursuant to COM. LAW § 202(8).  Mem. in Sup. of Mot. at 24-25 (citing to *Kemp v. Nationstar Mortg. Ass'n*, 239 A.3d 798 (Md.App. 2020), <u>cert. granted sub</u>

---

[15]     Richard's personal liability on the loan is extinguished by the Primestar Settlement and her personal Chapter 7 Bankruptcy.  SAC at ¶¶ 30, 35.  Yet, before the commencement of this action and even thereafter it retained counsel to represent it, Shellpoint has continued to communicate to various credit reporting agencies false credit information about Richards that she is personally obligated on he debt.  SAC at ¶¶ 7, 37, 51.  Those communications, which are for no legitimate purpose other than Shellpoint's apparent desire to punish Richards for bringing this action, are *per se* violations of 15 U.S.C.A. § 1692e(8) which is incorporated as a claim under COM. LAW § 202(11).  SAC at ¶¶ 106-107.  *Compare Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014).

_nom._ *Nationstar Mortg. LLC v. Kemp*, 241 A.3d 870 (Md. 2020)).[16]   *Kemp* and *Chavis* hold, respectfully, that MCDCA claims under COM. LAW § 202(8) concern "methods of collection" and not "disputes about sums that are claimed due."  Neither *Kemp* nor *Chavis* involve claims under COM. LAW § 202(11) which incorporates violations of conduct subject to the FDCPA as *per se* violations of the MCDCA.

Like the plain text of the MCDCA, claims under the FDCPA are not limited to improper 'methods of collection.'  *See generally* FDCPA.  The Federal case law under the FDCPA regularly finds valid claims based on debt collectors' conduct seeking improper sums from consumers.  *See e.g.  Hageman v. Barton*, 817 F.3d 611 (8th Cir. 2016)(finding consumer stated a claim under the FDCPA based upon interest and costs sought by collection attorney in garnishment proceeding that substantially exceeded interest authorized by Missouri law); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 609 (11th Cir. 2014)(holding a  collection agency violated the FDCPA by adding a 33.33% "collection fee" when the consumer only agreed in the medical services agreement to pay for the "actual costs" of collection); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002)(holding the imposition of a $250 shoplifting fee for a dishonored check was a violation of the FDCPA where state law hold caps the maximum fee at $15).  The Legislature knew this case law when it added COM. LAW § 202(11) to the MCDCA in 2018 in the FINANCIAL CONSUMER PROTECTION ACT OF 2018, 2018 Maryland Laws Ch. 731 (H.B. 1634).  Yet it did not choose to limit the provision to exclude conduct violating the FDCPA about sums claimed due.  So, it simply would be improper to add such an exclusion to COM. LAW § 202(11) not expressed by the

---

[16]   On *certiorari, Kemp* was argued in the Court of Appeals in March and a decision on it and its companion MCDCA case *Chavis v. Blibaum Assocs., P.A.*, 230 A.3d 188, 194 (Md. App. 2020), cert. granted sub nom. *Chavis v. Blibaum & Assoc., P.A.*, 240 A.3d 852 (Md. 2020) should be published by the end of August 2021.

Legislature. *Andrus*, 446 U.S. at 616–17; *Hillman,* 569 U.S. at 496; *Reyes*, 903 F.3d at 431–32; *Russell*, 430 F. Supp. 2d at 527; *Noah,* 261 F. Supp. 2d at 539.

In any event Richards' MCDCA claims concern not disputes about amounts claimed due by Shellpoint but the methods of collection it uses which are unfair, unconscionable, and otherwise is an attempt to enforce a right with knowledge that does not exist. *See e.g.* SAC at ¶¶ 64, 106-107 (describing the "conduct" of alternating the loan modification on the pretext by its counsel to change the printed name but actually to change the other material terms and claiming sums due that are not owed by Richards), ¶¶ 46-47, 103-104 (addressing the conduct failing to give for payments made and received by Shellpoint and its predecessor(s), ¶¶ 27, 48(d), 103 (concerning conduct of adding unlawful sums to Richard's account without the right to do so), ¶¶ 22-26, 33-34, 36-37, 40, 43, 50-51 (describing conduct of acquiring and utilizing knowingly inaccurate loan data from BSI (and others) without adequately having procedures and practices in place to avoid the consequences to Richards that it would demand sums not owed).

Since the Court already determined Richards had plausibly stated MCDCA claims, she also properly stated *per se* claims under the MCPA. COM. LAW § 13-301(14)(iii). In addition, the well pled facts of the SAC also state independent claims for Richards under the MCPA.

> The CPA serves as a primary source of state oversight and regulation of debt collection activities. "Consumer credit" and "consumer debts" are express subjects of the CPA. *See* CL § 13-101(d) (defining "consumer credit" and "consumer debt" as "credit, debts or obligations ... which are primarily for household, family, or agricultural purposes"). The CPA makes it unlawful to "engage in any unfair, abusive, or deceptive trade practice" in "[t]he extension of consumer credit" or "[t]he collection of consumer debts." CL §§ 13-303(4); (5)…

> The Act's private cause of action, codified at CL § 13-408(a), provides that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the Consumer Protection Act]." CL § 13-408(a).

*Andrews & Lawrence Pro. Servs., LLC v. Mills*, 223 A.3d 947, 961 (Md. 2020).

Based upon her prior briefing to the Court, the Court's prior ruling (ECF. 20-21) and her well pled facts in the SAC, Richards has asserted MCPA claims pursuant to COM. LAW §§ 13-301(1)(3)(SAC at ¶¶ 109-119) as a result of: (i) Shellpoint's MCDCA violations (SAC at ¶ 109); (ii) Shellpoint's seeking and demanding sums from Richards which were not lawfully due as part of its debt collection practices or were barred by Maryland law from being imposed or were waived by its predecessor(s) (*see e.g.* SAC at ¶¶ 34, 37, 40, 49-50); [17] and (iii) Shellpoint's materially false or misleading statements made in connection with its servicing of Richards' loan (*see e.g.* AC at ¶¶ 36-37, 48(d), 49-50, 51, 61-64).[18]   She relied upon its statements and representations and omissions (SAC at ¶¶ 45-46, 52, 55, 57, 60, 63, 65, 117), including the non-judicial, written misstatement statements of its counsel[19] on why the loan modification needed to be redone (SAC at ¶¶ 60-64), and as a result has sustained individual damages and losses.

---

[17]   The MCPA prohibits mortgage actors from acting unfairly and deceptively while conducting mortgage servicing and collection of a mortgage loan by knowingly omitting details of what it is charging borrowers on a pretextual, false basis which wrongfully and negatively infect the loan.  The Court of Appeals has recognized a consumer's rights to proceed on MCPA claims in such circumstances.  *See e.g. MRA Prop. Mgmt. Inc. v. Armstrong*, 426 Md. 83, 109 (2012); *Morris v. Osmose Wood Preserving*, 340 Md. 519, 541 (1995); *Hoffman v. Stamper*, 385 Md. 1, 32 (2005). *See also Jackson v. Sagal*, 370 F. Supp. 3d 592,  601–02 (D. Md. 2019).

[18]   Further this Court has routinely accepted that MCPA claims against mortgage servicers like Shellpoint are viable in factually similar situations to Plaintiff's situation.  *See, e.g., Currie v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 788, 797 (D. Md. 2013); *Marchese v. JPMorgan Chase Bank, N.A.*, 917 F. Supp. 2d 452, 466 (D. Md. 2013); *Piotrowski v. Wells Fargo Bank, N.A.*, No. CIV.A. DKC 11-3758, 2013 WL 247549, at *13 (D. Md. Jan. 22, 2013). *Compare Jackson* 370 F. Supp. 3d at 601–02 (D. Md. 2019)(recognizing that misrepresentations and omissions in billing statements are actionable under the FDCPA).

[19]   It has long been recognized that a party is liable for the statements, omissions, and acts of it counsel even if it was not aware of the statement.  *Putnam v. Day*, 89 U.S. 60 (1874).  *See also Andrews*, 223 A.3d at 972 (holding "under Maryland agency law as well as the Restatement…the attorney-client relationship is a principal-agent relationship under which vicarious liability claims may be brought" and principal may be liable for the unlawful acts of its attorney under the MCPA on its behalf).

Based on the foregoing, Richards has properly pled claims under the MCDCA and MCPA and Shellpoint's motion to dismiss should be DENIED. Shellpoint has not presented any legitimate argument in support of its successive request to dismiss Richards' MCPA claims.

## IV.   CONCLUSION

Based on the forgoing argument and authorities, Shellpoint's successive Motion should be denied.

Respectfully Submitted,

**FOR THE PLAINTIFF**

*/s/ Phillip R. Robinson*
Phillip R. Robinson
Federal Bar No. 27824
CONSUMER LAW CENTER LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
(301) 448-1304
phillip@marylandconsumer.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this day the foregoing and attached exhibits and proposed order, was served via the Court's electronic filing on all counsel and parties of record.

 /s/ Phillip R. Robinson
Phillip Robinson