## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## BALTIMORE DIVISION

| | |
|---|---|
| **MANDA RICHARDS** | ) |
| | ) |
| *On behalf of herself individually and* | ) |
| *similarly situated persons.* | ) |
| | ) |
| Plaintiffs, | ) CASE NO.: 1:20-cv-01282-ELH |
| | ) |
| v. | ) |
| | ) |
| **NEWREZ LLC d/b/a SHELLPOINT** | ) |
| **MORTGAGE SERVICING** | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### NEWREZ LLC d/b/a SHELLPOINT MORTGAGE SERVICING'S
### REPLY IN SUPPORT OF ITS MOTION TO DISMISS
### PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

Andrew J. Narod (Federal Bar No. 29738)
T. Sky Woodward (Federal Bar No. 10823)
Joshua Dhyani (Federal Bar No. 19929)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, N.W.
Suite 1350
Washington, DC 20036
Tel: (202) 719-8271
Fax: (202) 719-8371
E-mail: anarod@bradley.com
E-mail: swoodward@bradley.com
E-mail: jdhyani@bradley.com

*Counsel for Defendant*
*NewRez, LLC d/b/a Shellpoint Mortgage Servicing*

## TABLE OF CONTENTS

ARGUMENT ................................................................................................................... 1

I.      THIS COURT SHOULD RULE ON THE MERITS OF SHELLPOINT'S MOTION. .... 1

II.     PLAINTIFF FAILS TO STATE A CLAIM UNDER RESPA .......................................... 5

        A.      Shellpoint timely sent the Hello Letter to the correct address. ............................... 5

        B.      Plaintiff has not alleged actual damages that arose "as a result of" the alleged
                RESPA violation. .................................................................................................... 8

        C.      Because Plaintiff has not adequately alleged actual damages, statutory
                damages are unavailable as a matter of law. .......................................................... 10

III.    PLAINTIFF FAILS TO ALLEGE ACTIONABLE FDCPA CLAIMS. .......................... 11

IV.     PLAINTIFF'S INDIVIDUAL CLAIMS SHOULD BE DISMISSED. ........................... 15

V.      PLAINTIFF'S CLASS DEFINITIONS SHOULD BE STRICKEN. .............................. 17

        A.      Plaintiff has again failed to define an ascertainable class. .................................... 17

        B.      Plaintiff's re-defined classes are grossly and impermissibly overbroad. ............... 19

CONCLUSION .............................................................................................................. 20

CERTIFICATE OF SERVICE ........................................................................................ 22

## ARGUMENT

### I.   THIS COURT SHOULD RULE ON THE MERITS OF SHELLPOINT'S MOTION.

Plaintiff devotes an outsized portion of her Opposition [Doc. 26] to an effort to avoid addressing the legal deficiencies of her claims, instead invoking evasive procedural arguments in order to survive a motion to dismiss. In short, Plaintiff believes that Shellpoint should not be entitled to seek dismissal of her new pleading because this Court previously adjudicated a motion to dismiss her prior pleading. But Plaintiff overlooks the fact that *she elected* to file a Second Amended Complaint, that *she elected* to add new facts to her existing claims, that *she elected* to also include new legal theories in her new pleading, and, by filing her amendment, that *she elected* to supersede her prior pleading.[1] Plaintiff was not required to amend her pleading at all after this Court's prior decision, Doc. 20-21, and could have elected to proceed to adjudicate her case without any further amendments. But *she elected*, instead, to amend her pleading.

Despite these realities, Plaintiff's Opposition relies heavily (and sometimes exclusively) on her theories that Shellpoint's arguments are untimely, that the Court should deny Shellpoint's Motion solely because it is the second motion to dismiss Shellpoint has filed, and that— according to Plaintiff—the Court has already rejected Shellpoint's arguments. (*See* Opp. at 5–7). Plaintiff's arguments fail for two reasons: (1) the defense of failure to state a claim cannot be waived by failing to raise it in the first motion to dismiss; and (2) even if any arguments could have been raised previously, courts generally rule on the merits of a successive Rule 12 motion because those same arguments could be raised in a motion for judgment on the pleadings.

---

[1] *See Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (properly filed amended complaint supersedes prior iteration); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 n.34 (D. Md. 2015) (same).

Plaintiff's assertion that Shellpoint's Motion is procedurally improper relies heavily on Federal Rule of Civil Procedure 12(g)(2), which provides that, "except as provided in Rule 12(h)(2) or (3), a party … must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." (Opp. at 5). Contrarily, though, Rule 12(h)(2) provides that the defense of "[f]ailure to state a claim" may be asserted in a subsequent responsive pleading, a motion for judgment on the pleadings, or at trial, even if it was not asserted in an earlier motion. Under Plaintiff's hyper-technical interpretation, Rule 12 precludes a defendant from filing more than one Rule 12(b)(6) motion if the arguments could have been raised in an earlier motion, while permitting the defendant to file an answer followed by a Rule 12(c) motion asserting those same arguments.

Plaintiff's proposed interpretation is at odds with Rule 1's directive of "the just, speedy, and inexpensive determination of every action," as courts have repeatedly recognized. *See, e.g.*, *Impact Applications, Inc. v. Concussion Mgmt., LLC*, 2021 WL 978823, at *5 n.8 (D. Md. Mar. 16, 2021) (permitting successive Rule 12 motions because "it is far more efficient to treat the arguments prior to more extensive discovery"); *Rosela v. Am. Power Boat Ass'n*, 2017 WL 5517390, at *7 (D. Md. Nov. 16, 2017) (same). In essence, Plaintiff asks the Court to reject Shellpoint's arguments out-of-hand now so that Shellpoint can file an answer and then assert the exact same arguments in a motion for judgment on the pleadings shortly thereafter. (*See* Opp. at 5–11). In the interest of efficiency, the Court should not delay a decision on Shellpoint's Motion.

To the extent Plaintiff impliedly argues that Shellpoint waived these arguments, she is incorrect as a matter of law. There are certain defenses that are deemed waived if not raised in a Rule 12 motion, which are all procedural in nature: challenges to personal jurisdiction,[2] venue,

---

[2] Shellpoint raised its personal jurisdiction defense in its first Rule 12 motion, and has re-raised it here, to avoid this exact type of waiver.

process, and service of process. Fed. R. Civ. P. 12(h)(1). Failure to state a claim is not one of them:

> It is to be noted that while the defenses specified in subdivision (h)(1) are subject to waiver as there provided, the more substantial defenses of failure to state a claim upon which relief can be granted, . . . are expressly preserved against waiver by amended subdivision (h)(2) and (3).

Fed. R. Civ. P. 12 advisory committee's note.

This Court should not entertain Plaintiff's request to engage in timely and costly discovery on otherwise legally invalid theories. Indeed, because "a complaint is always vulnerable to a challenge for legal sufficiency, it is far more efficient to treat the arguments prior to more extensive discovery." *Dart Drug Corp. v. Corning Glass Works*, 480 F. Supp. 1091, 1095 n. 3 (D. Md. 1979). In fact, "courts routinely exercise their discretion" to allow successive motions to dismiss in response to an amended pleading to reach the merits and potentially avoid unnecessary and expensive prolonged litigation. *See, e.g.*, *Aviles-Cervantes v. Outside Unlimited, Inc.*, 276 F. Supp. 3d 480, 487–88 (D. Md. 2017) (collecting cases); *In re Apple Iphone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017) ("Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1."). The same rationale supports ruling on the merits of Shellpoint's Motion here as opposed to requiring an answer and motion for judgment on the pleadings, thereby creating unnecessary expense and delay in the resolution of this matter, especially where certain claims have been materially altered by the imposition of new facts, and new legal claims, in the amendment.

The cases on which Plaintiff relies do not counsel otherwise. In *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, the court noted that it had already considered and rejected the identical legal argument advanced by the

defendants in their second motion to dismiss. 2018 WL 5761689, at *2 (D. Md. Nov. 1, 2018), *order clarified on reconsideration*, 2018 WL 6324806 (D. Md. Dec. 3, 2018). *Tri-State Zoological Park* has no applicability here because this Court has not yet considered the arguments Shellpoint raises here, much less expressly rejected them. Instead, Shellpoint attempted to omit from its current Motion arguments that the Court expressly considered in the first iteration of briefing in this case. Nor does *Rowley v. McMillan*, 502 F.2d 1326 (4th Cir. 1974), provide a different result. In *Rowley*, the court stated that "[a]n unasserted defense available at the time of response to an initial pleading may not be asserted when the initial pleading is amended." *Id.* at 1333. Critically, *Rowley* involved the defense of lack of personal jurisdiction, which is waived if not raised in the first 12(b)(2) motion. *Id.* The court found waiver of this 12(b)(2) defense. *Id.* The court did not state a blanket rule that new Rule 12(b)(6) motions raising other new defenses are prohibited, *see id.*, as suggested by Plaintiff in her selective quotation of *Rowley*'s holding. (*See* Opp. at 5, 13–14, 22, 30). Unlike the personal jurisdiction, the defense of failure to state a claim is not waived by failing to raise it in the first motion.

Consistent with the authority on this issue, the Court should entertain Shellpoint's Rule 12 Motion on its merits. This is especially so given that the First Amended Complaint contained another named Plaintiff, certain different claims, and different proposed class definitions. And, this is also so because the new amendment adds a significant volume of new allegations to this case, as is evidenced in the redlined copy Plaintiff submitted to the Court. (*See* Doc. 24-1). While Plaintiff had the opportunity to proceed forward after the Court's prior ruling, she instead made changes to each cause of action presented. (*Id*. at 33-42). As Shellpoint explains below, the new iteration of Plaintiff's claims fail as a matter of law, and her re-defined classes are more defective than her original classes. There is no reason to delay reaching the merits on these issues.

## II.      PLAINTIFF FAILS TO STATE A CLAIM UNDER RESPA.

### A.      Shellpoint timely sent the Hello Letter to the correct address.

Plaintiff mischaracterizes Shellpoint's RESPA argument as a "disputed factual argument" that cannot be resolved on the pleadings. (Opp. at 14). That is not the case. Taking Plaintiff's well-pled factual allegations as true and applying controlling law to them supports dismissal with prejudice of her RESPA claim (and of the FDCPA claim bootstrapped to it).

Plaintiff claims Shellpoint violated RESPA by sending her Hello Letter to the address listed in her Deed of Trust, rather than the address where she alleges she now resides. (SAC ¶¶ 39–45). Plaintiff is mistaken. A servicer is required to mail a Hello Letter to the address listed in the Deed of Trust "**unless** the borrower has notified the servicer of a new address (or addresses) **pursuant to the servicer's requirements** for receiving a notice of a change of address" under the CFPB's Official Interpretations of 12 C.F.R. § 1024.33(b)—the provision of Regulation X than implements RESPA § 2605(c). 12 C.F.R. § Pt. 1024, Supp. I, ¶ 33(b)(3) (emphasis added). The CFPB's interpretation of 12 C.F.R. § 1024.33(b) is "controlling" under *Auer v. Robbins*, 519 U.S. 452, 461 (1997), as Shellpoint explained in its Memorandum. (Mem. at 6). Plaintiff does not argue otherwise in her Opposition. (*See* Opp. at 19–29). Tellingly, Plaintiff fails to even once address the CFPB's Official Interpretation of § 1024.33(b). (*See id.* at 9–43).

Under the CFPB's controlling interpretation, Plaintiff must adequately allege she "notified" BSI or Shellpoint that she wished to receive notices at her "new address … pursuant to [their] requirements for receiving a notice of change of address" in order to state a claim. 12 C.F.R. § Pt. 1024, Supp. I, ¶ 33(b)(3). Plaintiff does not allege she ever followed BSI or Shellpoint's requirements to notify them of her address change. (*See* SAC ¶¶ 39–45). Thus, Plaintiff's allegations show Shellpoint timely sent the Hello Letter to the legally correct address.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff contends that Shellpoint's "theory" that the Deed of Trust address was the correct notice address "is counter to [the] remedial purpose of RESPA for Shellpoint to give timely notice to [her] and its duties as a transferee servicer to do so," citing inapposite "compliance bulletins" from the CFPB to support that proposition. (Opp. at 15 ns. 7–8). In reality, Shellpoint's "theory" is one and the same with the CFPB's official position regarding where Hello Letters must be sent: "The Bureau believes that servicers should be responsible for providing a notice **to the address listed by the borrower in the mortgage loan documents or different addresses they have received through their own procedures**, consistent with § 1024.11[3] and applicable case law." *Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 FR 10696, 10728 (hereinafter "CFPB Commentary") (emphasis added).[4]

The "applicable case law" the CFPB references is *Rodriguez v. Countrywide Homes*, 668 F. Supp. 2d 1239, 1245 (E.D. Cal. 2009). CFPB Commentary 78 FR at 10728 n.87. *Rodriguez* held that "RESPA requires a lender to send a Good Bye letter to the Mailing Address listed by the borrower in the loan documents," unless "the borrower submits an express change of mailing address[.]" *Rodriguez*, 668 F. Supp. 2d at 1245. The court rejected the same argument that Plaintiff asserts here—that the servicer "should have used reasonable diligence to search for Plaintiffs' last known address," explaining that imposing "such a duty … would require the

---

[3] This regulation, 12 C.F.R. § 1024.11, states that RESPA mailing obligations are satisfied "by placing the document in the mail (whether or not received by the addressee)," as Shellpoint explained in its Memorandum. (Mem. at 6–9). Plaintiff claims this regulation "is inapplicable to the actual claim before the Court" regarding her allegation that Shellpoint failed to satisfy its Hello Letter obligations under RESPA. (Opp. at 23 n.9). The CFPB's statement that servicers must send Hello Letters "consistent with § 1024.11" proves Plaintiff is mistaken.

[4] Courts often look to "the preamble of the final rule as evidence of context or intent of the agency promulgating the regulations." *City of Las Vegas, Nev. v. F.A.A.*, 570 F.3d 1109, 1117 (9th Cir. 2009); 33 Charles Alan Wright & Arther R. Miller, *Federal Practice & Procedure* § 8437 (2d ed. 2021) ("[T]he notice-and-comment process … requires agencies to publish explanatory statements of basis and purpose, sometimes called "preambles," to justify and explain their rules. Such language explaining a rule, though not legally binding as such, can help resolve ambiguities in regulatory language that does bind.").

lender to undertake a detailed investigation where the borrowers failed to abide by their responsibilities to … abide by the lender's [address-change] policies." *Id.* at 1247.

Second, Plaintiff accuses Shellpoint of "try[ing] to mislead the Court from the actual well pled facts" concerning the Notice of Change of Address she filed in her bankruptcy under Fed. R. Bankr. P. 4002(a)(5). (Opp. at 14 (citing Opp. Ex. 1)). This inappropriate accusation, though, is also plainly incorrect as a matter of fact. Shellpoint explained at length why Plaintiff's Notice of Change of Address in her bankruptcy is irrelevant under the CFPB's Official Interpretations of 12 C.F.R. § 1024.33(b) and decisional law. (Mem. at 8–10). Despite her incorrect accusation, Plaintiff musters no authority to support the entirely novel proposition that filing a Notice of Change of Address in a bankruptcy case somehow satisfies the requirement set forth in the CFPB's Official Interpretations that the borrower "notif[y] the servicer of a new address … pursuant to the servicer's requirements for receiving a notice of a change of address." 12 C.F.R. § Pt. 1024, Supp. I, ¶ 33(b)(3).

Instead of addressing Shellpoint's arguments regarding the operation of directly on-point statutes, regulations, and binding agency interpretations, Plaintiff spends several pages discussing *Harrell v. Freedom Mortg. Corp.*, 976 F.3d 434 (4th Cir. 2020), a case that does not at all concern Hello Letters, as Plaintiff openly admits. (Opp. at 16). According to Plaintiff, *Harrell* "addresses five primary issues and topics relevant and material to Shellpoint's" Hello Letter arguments: (1) "RESPA is remedial legislation"; (2) courts "consider[ ] 'the broader statutory structure'" when interpreting statutory provisions; (3) "'well-pleaded allegations'" are accepted as true at "'the motion-to-dismiss stage'"; (4) servicers are required to "'follow … statutory mandates'"; and (5) the Fourth Circuit "considered, accepted, and applied the arguments of the *Amicus Curiae* Brief of the [CFPB] as the agency charged with RESPA

enforcement." (Opp. at 25–26 (quoting *Harrell*, 976 F.3d at 434)). Shellpoint does not dispute that the first four "topics" are accurate statements of broad legal principles. But they have no application here given that the fifth "topic" Plaintiff identifies—the primacy of the CFPB's interpretations of its own ambiguous regulations—is fatal to her RESPA claim. *See Auer*, 519 U.S. at 461 (an agency's interpretation of its own regulations is usually controlling).

The CFPB's Official Interpretation is clear: a servicer "must" send a Hello Letter to the address in the original "loan documents, unless the borrower" follows the "servicer's requirements" to notify the servicer of their change of address. 12 C.F.R. § Pt. 1024, Supp. I, ¶ 33(b)(3). Plaintiff has not (and cannot) allege she followed BSI or Shellpoint's change-of-address requirements. (SAC ¶¶ 39–45). As a result, the Deed of Trust address was the correct address to send the Hello Letter as a matter of law, and that is where Shellpoint sent it. (Mem. Ex. B; SAC ¶¶ 39, 44). Plaintiff's RESPA claim should be dismissed with prejudice.

**B.      Plaintiff has not alleged actual damages that arose "as a result of" the alleged RESPA violation.**

As Shellpoint explained at length in its Memorandum (Mem. at 10–14), even if Plaintiff had adequately alleged a RESPA violation (and she has not), her RESPA claim would still fail because she has failed to allege a "causal connection" between the alleged violation and her alleged damages. *See, e.g.*, *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1059 (7th Cir. 2018) ("causal connection" between RESPA violation and actual damages "is a critical element"). Plaintiff's entire response to this argument is contained in two separate, conclusory sentence fragments: (1) her statement that the fees and charges were "not permitted … because since Shellpoint acquired the loan it failed to send her periodic statements or other notice that such fees were being assessed" (Opp. at 11); and (2) her declaration that she "has pled claims"

for RESPA "violations … which include … actual damages," followed by citations to her Second Amended Complaint (*id.* at 28).

But the referenced "periodic statements" are not required by RESPA—they are generally required by the Truth in Lending Act ("TILA"). *See* 15 U.S.C. § 1638(f). TILA does not apply to Shellpoint because it is not a "creditor" under that statute, as this Court has already held. (Mem. Op. at 51–52). Further, this Court has already held that Plaintiff is not entitled to receive any periodic statements because TILA does not require that servicers send periodic statements to borrowers, like Plaintiff, who have been "discharged from personal liability for" their mortgage loan through bankruptcy. (*Id.* at 49–50). As for the nebulous "other notice that such fees were being assessed" Plaintiff references (Opp. at 11), such "other notice" could not be a Hello Letter because Hello Letters are not required to contain any information regarding "fees" on a borrower's mortgage loan account. *See* 12 U.S.C. § 2605(c)(3) (referencing 12 U.S.C. § 2605(b)(3), which lists the required contents of both Hello Letters and Goodbye Letters). And the allegations in the Second Amended Complaint that Plaintiff cites simply parrot the arguments in her Opposition that fees were charged "without notice" or are arguments unrelated to her alleged untimely receipt of the Hello Letter. (*See* Opp. at 20).

Even after this Court held that her TILA allegations were meritless, the same TILA violations are what Plaintiff actually attempts to link to the fees and charges at issue. The Second Amended Complaint contains no allegations that establish a causal link between those charges and fees and the alleged RESPA violation (Shellpoint mailing her Hello Letter to the Deed of Trust address). Plaintiff has thus failed to state a RESPA claim. *See Law v. Ocwen Loan Serv., LLC*, 587 Fed. Appx. 790, 795 (5th Cir. 2014) ("Because Law alleged no facts upon which his

injuries could be viewed as resulting from Ocwen's failure to provide him with [a Hello Letter] under RESPA, we conclude that the district court correctly dismissed his claim.").

**C.**     **Because Plaintiff has not adequately alleged actual damages, statutory damages are unavailable as a matter of law.**

Plaintiff's failure to adequately allege actual damages dooms her claim for statutory damages. Section 2605(f)'s plain language makes clear that actual damages are a prerequisite for statutory damages, stating that RESPA provides for recovery of "(A) any actual damages to the borrower as a result of [a servicer's] failure" to comply with "any provision" of Section 2605; "and (B) any **additional** damages, as the court may allow, in the case of a pattern or practice of noncompliance with [§ 2605]'s requirements[.]" 12 U.S.C. § 2605(f)(1) (emphasis added).

"[A]dditional" means "'[e]xisting in addition, coming by way of addition; added." *Wirtz v. Specialized Loan Serv., LLC*, 886 F.3d 713, 720 (8th Cir. 2018) (quoting 1 *Oxford English Dictionary* 144 (2d ed. 1989)). For a court to "allow" "additional" statutory damages under Section 2605(f)(1)(B), "there must be other damages to which they are added"; namely, the "actual damages to the borrower as a result of" the RESPA violation allowed by Section 2605(f)(1)(A). *See Wirtz*, 886 F.3d at 719–20.  Thus, a borrower that suffers no "actual damages" cannot "be eligible to recover 'additional' statutory damages" under RESPA. *Id.* at 720; *see also Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1247 (11th Cir. 2016) ("The question is not now before us, but we observe without ruling on the question, that the use of 'additional' [in 12 U.S.C. § 2605(f)(1)(B)] seems to indicate that a plaintiff cannot recover pattern-or-practice damages in the absence of actual damages."); *cf. Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1059 (7th Cir. 2018) ("Plaintiffs bringing claims under RESPA must show actual injury."). Since Plaintiff has failed to adequately allege actual damages caused by the purported RESPA violation, statutory damages are unavailable, and Count I should be dismissed with prejudice.

10

### III.   PLAINTIFF FAILS TO ALLEGE ACTIONABLE FDCPA CLAIMS.

Plaintiff's FDCPA claim is primarily based on the RESPA violations she erroneously asserts: (1) Shellpoint (correctly) mailing the Hello Letter to the Deed of Trust address; and (2) Shellpoint's alleged failure to maintain policies and procedures "to ensure the addresses it[ ] utilizes to correspond with borrowers are correct[.]" (Opp. at 32). According to Plaintiff, these purported RESPA violations also support her FDCPA claim under 15 U.S.C. § 1692f, which prohibits the use of "unfair or unconscionable means to collect or attempt to collect any debt."

As this Court has recognized, "the FDCPA 'is not properly used as an enforcement mechanism for the TILA[.]'" (Mem. Op. at 52–53 (collecting cases)). Nor does FDCPA § 1692f's general clause prohibiting "unfair or unconscionable" debt-collection methods "transform every violation of state or federal law into a violation of the FDCPA." *Richards v. PAR, Inc.*, 954 F.3d 965, 969 (7th Cir. 2020). Put simply, "violations of other federal laws that provide [their own] remedial measures do not violate the § 1692(f) prohibition on unfair and unconscionable means to collect or attempt to collect a debt." *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1156 (D. Or. 2010).

It is RESPA, not the FDCPA, that places "an affirmative obligation on a" servicer to mail a Hello Letter. *Neff v. Capital Acquisitions & Mgmt. Co.*, 238 F. Supp. 2d 986, 992 (N.D. Ill. 2002) (cited in Mem. Op. at 53). Because "Plaintiff's FDCPA claim is entirely predicated on a nonexistent [RESPA] violation, [P]laintiff's FDCPA claim must be dismissed" under the same reasoning this Court used to dismiss the TILA-based FDCPA claims. (*See* Mem. Op. at 53 (quoting *Neff*, 238 F. Supp. 2d at 992)).

The cases on which Plaintiff relies to support her contention that "a violation of § 1692f may be based on violations of other statutory duties" are either inapposite or favorable to Shellpoint's position. (*See* Opp. at 33). Falling into the latter category is *Carlson v. First Revenue*

11

*Assurance*, 359 F.3d 1015 (8th Cir. 2004). There, the Eighth Circuit explained that the "FDCPA was designed to provide basic, overarching rules for debt collection activities; it was not meant to convert every violation of a state debt collection law into a federal violation." *Id.* at 1018. Rather, "[o]nly those collection activities that use 'any false, deceptive, or misleading representation or means,' including '[t]he threat to take any action that cannot legally be taken' under state law, will also constitute FDCPA violations." *Id.* The court thus concluded that even if defendant violated state law, that violation would **not** constitute an FDCPA violation. *Id.*

Plaintiff's next three cases are inapposite. In each, the defendant lacked the necessary licenses to collect debts in the subject state, and the respective court held the defendant's threatened collection activities violated the FDCPA's express  prohibition on "threatening to take action that cannot legally be taken[.]" 15 U.S.C. § 1692e(5). To the contrary, and as discussed at length above and in Shellpoint's Memorandum, a servicer fulfilling its RESPA Hello Letter obligations is not a condition precedent to the servicer's ability to charge costs and fees to a borrower's mortgage loan account. (*See, e.g.*, Mem. at 19–24). Shellpoint fulfilled its Hello Letter obligations here, but even if it had failed to do so, that would not render the fees and charges "unfair or unconscionable" under 15 U.S.C. § 1692f.

The case on which Plaintiff most relies—*LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010)—makes tying the complained-of conduct to the FDCPA's express prohibition on "threatening to take action that cannot legally be taken" an express requirement. 15 U.S.C. § 1692e(5). There, the Eleventh Circuit made clear that it was not holding "that all debt collector actions in violation of state law constitute *per se* violations of the FDCPA … [r]ather, the conduct or communication at issue **must also violate the relevant provision** of the FDCPA." 601 F.3d at 1192 (emphasis added). Because the defendant had failed to register as a

debt collector under Florida's debt collection statutes, it was unable to file suit in the State of Florida. *Id.* at 1198. Thus, the court held that if the defendant "threaten[ed]" the debtor "with legal action" in a dunning letter, that would violate FDCPA § 1692e(5)'s prohibition on "threatening to take action that cannot legally be taken[.]" *Id.* at 1193.

In Plaintiff's next case, this Court adopted the rule set forth in *LeBlanc*—"doing business in violation of the state licensing requirement does not constitute a 'per se' violation of the FDCPA … rather, the conduct or communication at issue must also violate the relevant provision of the FDCPA." *Ademiluyi v. PennyMac Mortg. Inv. Tr. Holdings I, LLC*, 929 F. Supp. 2d 502, 519 (D. Md. 2013) (quoting *LeBlanc*, 601 F.3d at 1192). Likewise, the court in *Bradshaw v. Hilco Receivables, LLC* adopted the *LeBlanc* rule to analyze alleged violations of "state collection licensing law[.]" 765 F. Supp. 2d 719, 728–29 (D. Md. 2011).

The final case Plaintiff cites—*Farber v. Brock & Scott, LLC*, 2016 WL 5867042, at *6 (D. Md. Oct. 6, 2016)—relies on a Fourth Circuit case that has been abrogated by the United States Supreme Court. (Opp. at 34–35). In *Farber*, the court held that a foreclosure trustee's "act of scheduling and advertising a foreclosure sale not authorized under Maryland law could … thus violate the" FDCPA's prohibition on "threat[s] to take any action that cannot legally be taken[.]" 2016 WL 5867042, at *5 (quoting 15 U.S.C. § 1692e). To support the proposition that "a foreclosure action constitutes 'an attempt to collect a debt' within the meaning of the FDCPA," the *Farber* Court cited *Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 375 (4th Cir. 2006), which held that "trustees, including attorneys, acting in connection with a foreclosure can be 'debt collectors' under the Act." *Farber*, 2016 WL 5867042, at *5. The *Wilson* decision was expressly abrogated by *Obduskey v. McCarthy & Holthus, LLP*, 139 S. Ct. 1029, 1035 (2019), which held that "but for [the minimal provisions in] § 1692f(6), those who engage in

13

only nonjudicial foreclosure proceedings are not debt collectors within the meaning of the" FDCPA. *Id.* at 1038. Plaintiff fails to mention this in her Opposition. (Opp. at 33–34).

Here, unlike in *Farber*, *Ademiluyi*, *LeBlanc*, and *Bradshaw*, Plaintiff does not (and cannot) allege any conduct by Shellpoint that the FDCPA expressly prohibits. (*See* SAC ¶¶ 84–91). Instead, she alleges a RESPA violation that is hyper-technical in theory, non-existent in reality (even taking all Plaintiff's well-pled factual allegations as true), and unrelated to the fees and charges that she alleges are her damages. (*See id.*). Plaintiff fails to allege that those fees and charges were not authorized by the Deed of Trust, or explain how her purported lack of timely receipt of the Hello Letter rendered any otherwise authorized fees and charges improper. (*Id.* at ¶¶ 49–50). And Plaintiff fails to even acknowledge Shellpoint's argument that she cannot identify any inaccurate loan data pertaining to **her loan** or loan charges that are not authorized by the Deed of Trust for **her loan**. (Mem. at 16-17). Instead, Plaintiff points to perceived "widely recognized [shortcomings] in the secondary mortgage market" that bear no apparent ties to any perceived or concrete wrongdoing suffered by her personally. (*See* Opp. at 28).

And, Plaintiff fails to plausibly allege the use of "unfair or unconscionable means to collect or attempt to collect any debt" as required to sustain a claim under 15 U.S.C. § 1692f. That FDCPA provision is aimed at collection efforts that have "the capacity to harass the debtor or to pressure her to pay the debt." *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 236 (4th Cir. 2015). Plaintiff cannot explain how sending a Hello Letter to an address at which she allegedly no longer lives was meant to "harass" her or "pressure her to pay [a] debt." *See id.* Placing the words "unconscionable" and "unfair" into a complaint is alone insufficient to state a § 1692f claim. *See, e.g.*, *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (The "mere recital of elements

of a cause of action, supported only by conclusory statements, is not sufficient to survive a [12(b)(6)] motion."). Count II should be dismissed with prejudice.

## IV.   PLAINTIFF'S INDIVIDUAL CLAIMS SHOULD BE DISMISSED.

Shellpoint's Memorandum (pp. 21-29) explained that Plaintiff's amended individual claims, which provide a significant series of new allegations not contained in the First Amended Complaint (*see* Doc. 24-1), should also be dismissed. Shellpoint argued that Plaintiff failed to state a claim under Md. Code, Com. Law ("C.L.") § 14-202(11) because she has failed to state an underlying FDCPA violation, that Plaintiff has failed to plead a claim under C.L. § 14-202(8) because she is not entitled to challenge the validity of amounts due rather than a method of collection, that Plaintiff has failed to state a *per se* MCPA claim, and that the conduct Plaintiff complains of does not state an unfair trade practices claim under C.L. §§ 13-301 and 13-303.

Plaintiff's Opposition, while repeating the same procedural arguments as set forth for her putative class claims, expressly admits that she "add[ed] certain supplemental facts," and then outlines those specific facts. (Opp. at 30-31). The same arguments set forth above apply to rebut these procedural arguments. *See*, Section I. Plaintiff also apparently fails to address Shellpoint's argument that she abandoned her prior Complaint through amendment. (Mem. at 21 n.15).

More substantively, Plaintiff's Opposition addresses some, but not all, of Shellpoint's arguments in favor of dismissal of her individual claims. Plaintiff does not attempt to rebut Shellpoint's argument that her claims under C.L. § 14-202(11) fail without an underlying FDCPA violation, nor does she argue that Count III states a claim under C.L. § 14-202(11) despite Shellpoint's argument to the contrary. (Opp. at 30-34). This failure is most noticeable with respect to Shellpoint's unrebutted arguments that no underlying FDCPA claim has been stated as to collecting sums not lawfully due (Mem. at 22-23) and as to the complained of changes to Plaintiff's loan modification (Mem. at 23). Those points are effectively conceded.

Plaintiff, instead, argues that her alternative theory of liability—under C.L. § 14-202(8)—should survive. Shellpoint's Memorandum explained that Count III impermissibly seeks relief under C.L. § 14-202(8) because it challenges the *validity* of certain sums collected—stating that they are not lawfully due—rather than the *methods* used to collect sums. (Mem. at 24-25). Plaintiff responds that her claims involve certain "conduct"—which she equates to "methods" used to collect sums—citing other legal allegations in her SAC to support this proposition. (Opp. at 33). But Plaintiff fails to address the plain text of the only paragraph in her SAC that states her claim under C.L. § 14-202(8). That paragraph—¶ 108—explicitly bases Plaintiff's claim under C.L. § 14-202(8) on Shellpoint having allegedly "asserted rights which did not exist." That challenge, which appears to be the only basis actually provided in the SAC for Plaintiff's claim under C.L. § 14-202(8), invokes the *validity* of rights (sums) asserted to be due, rather than the *methods* employed to collect them.

Finally, Shellpoint's Memorandum set forth an exhaustive analysis explaining why Plaintiff's numerous claims under C.L. §§ 13-301 and 13-303 each fail. (Mem. at 25-30). Shellpoint advanced two reasons why these claims fail. First, Shellpoint explained that Count III omitted key allegations as to time, place, and contents of misrepresentations. (Mem. at 26-27). Plaintiff's cursory response curiously fails to at all address this deficiency. (Opp. at 33-34). Shellpoint also argued (at length) that the causes of action purportedly underlying Plaintiff's MCPA claims also fail. (Mem. at 27-30). Shellpoint explained why Plaintiff's claims for collecting sums not due are not actionable, including argument that certain claims are preempted. (Mem. at 27-28). It also explained why Plaintiff's MCPA claims based on a failure to give credits for payments received (Mem. at 28-29), a variance in loan modification terms (Mem. at 29), and alleged derogatory credit reporting (Mem. at 29-30) each individually fail in substance.

Plaintiff, in turn, opposes none of these arguments as to the substance of her MCPA claims, and thereby effectively conceded such arguments. (Opp. at 34). Plaintiff's counterpoint instead revolves around demonstrating that she has alleged certain illegal acts, reliance, and damages. (Opp. at 34). She also asserts that MCPA claims are "routinely accepted" against mortgage servicers like Shellpoint. (Opp. at 34 n.18). But none of these arguments address the *substantive* arguments Shellpoint set forth in great detail, rather than pleading deficiencies that Plaintiff would have preferred to instead address. (Mem. at 27-30). Plaintiff's MCPA claims in Count III, and Count III as a whole, fail and should be therefore dismissed with prejudice.

## V.    PLAINTIFF'S CLASS DEFINITIONS SHOULD BE STRICKEN.[5]

### A.    Plaintiff has again failed to define an ascertainable class.

This Court struck Plaintiff's proposed class definitions in the First Amended Complaint—which encompassed "all individuals" in two States for whom "Shellpoint ha[d] not timely provided" Hello Letters (FAC ¶¶ 73(a–b))—because they failed Rule 23's "ascertainability" requirement. *Alig v. Quicken Loans Inc.*, __ F.3d __, 2021 WL 899305, at *5 (4th Cir. Mar. 10, 2021) ("Rule 23 also contains an implicit requirement of ascertainability."). These "proposed class definition[s]," the Court explained, "'would impermissibly require [the Court] to certify a class solely on potential class members' say so'" regarding whether they received a Hello Letter, "or it would require 'individualized fact-finding and litigation' to identify class members"—specifically, a loan-by-loan review to determine whether a Hello Letter was "received by an individual before that individual can be included as a class member." (Mem. Op. at 55–56) (quoting *Zarichny v. Complete Pmt. Rec. Servs., Inc.*, 80 F. Supp. 3d 610,

---

[5] As Shellpoint made very clear in its Motion, it re-asserted that "the Court lacks personal jurisdiction over the claims of absent class members who are not Maryland residents" solely "to preserve the issue," in recognition that "this Court previously held its identical argument to be premature at the pleading stage." (Mot. at 37–38). This Court can ignore Plaintiff's two-page rebuttal to this "argument." (Opp. at 15–16).

624 (E.D. Pa. 2015) (striking an FDCPA class at the pleadings stage because the class was defined as individuals who did not receive a statutorily-required notice)).

Here, Plaintiff has made this ascertainability problem worse, not better, through re-defining her proposed classes in the Second Amended Complaint. (SAC ¶¶ 68(a–b)). Entry into the class is still determined by whether an individual received a Hello Letter. (*Id.*). But unlike the proposed classes in the First Amended Complaint, the new proposed classes include 18 States, the District of Columbia, and possibly the U.S. Virgin Islands. (*Id.*). As a result, the same loan-by-loan review process will be required; there will just be many more loan files to process.

Plaintiff's retorts to Shellpoint's ascertainability argument are superficial. First, she claims there "can be no doubt or dispute that the proposed classes can be identified by Shellpoint's own business records." (Opp. at 18). To the extent the sending of a Hello Letter may be determined from Shellpoint's records, that would also have been true to the same extent for the last set of proposed classes. There are just many more "business records" in the form of loan files to review under the new proposed definitions given the vast expansion of their geographic scope. But whether the address to which the letter was sent was the current residence address of the putative class member, which Plaintiff's theory makes the key question, is most assuredly not determinable without individual loan by loan and class member by class member factfinding.

Second, Plaintiff posits that a proposed class's large size does not mean "it should not be certified," as "the point of certifying such a class is to avoid … having hundreds or thousands of … cases clogging the Court's docket when one case can streamline similar claims together." (Opp. at 9–10 n.5). Plaintiff misses the point. A class action has no streamlining effect when "it would require 'individualized fact-finding and litigation' to identify class members[.]" (Mem. Op. at 56 (quoting *Zarichny*, 80 F. Supp. 3d at 625–26)). Screening out such putative class

actions is the purpose behind Rule 23's ascertainability requirement: "If class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quotations omitted). More "mini-trials" will be required under the new proposed class definitions than the prior class definitions. *See id.* This Court should apply the same reasoning to strike the new class definitions that it applied to the old.

### B.     Plaintiff's re-defined classes are grossly and impermissibly overbroad.

A class cannot be certified "'if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant.'" *Dykes v. Portfolio Recovery Assocs., LLC*, 2016 WL 346959, at *3 (E.D. Va. Jan. 28, 2016) (quoting *Kohen v. Pacific Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (collecting cases)). As Shellpoint explained in its Memorandum, Plaintiff's new proposed classes will encompass every borrower in 18 States and the District of Columbia who neither suffered a RESPA nor an FDCPA violation under Plaintiff's (flawed) understanding of those statutes. (Mem. at 35–37). It is facially apparent that these grossly overbroad classes cannot be certified. *See Dykes*, 2016 WL 346959, at *3 (refusing to certify a proposed FDCPA class "[b]ecause it [wa]s facially apparent that Plaintiff's proposed class contain[ed] many individuals who did not suffer harm").

Plaintiff's response is two-fold: (1) Shellpoint must wait to assert its "'non-damage' argument" until "after some discovery" so it can present "evidence … to the Court" (Opp. at 19); and (2) there will only be a "de minimis number of potentially uninjured parties" (*id.* (quoting *In re Nexium Antitrust Litig.*, 777 F.3d 9, 25 (1st Cir. 2015)). Plaintiff is wrong on both counts.

No discovery is needed to show the proposed classes are grossly overbroad; reviewing Plaintiff's class definitions and her own allegations is enough. Under Plaintiff's flawed RESPA and FDCPA theories, if a servicer does not actually deliver a Hello Letter to a borrower within

15 days of service transfer, all fees and charges the servicer imposes on the borrower thereafter constitute actual damages. (*See* Mem. at 35–36 (explaining Plaintiff's statutory theories)). But her proposed classes sweep in all individuals in more than 18 States who **received** a Hello Letter from Shellpoint in the last three years. (SAC ¶¶ 68(a–b)). Each individual that did receive a proper Hello Letter mailed within 15 days of service transfer would not have suffered a RESPA or FDCPA violation under Plaintiff's liability theories.

As this Court already explained, courts employ "the familiar standard embodied in Rule 12(b)(6) to determine whether pleadings plausibly allege a class." (Order at 54–55). Plaintiff has not (and cannot) plead that the vast majority of Shellpoint borrowers do not receive a Hello Letter within 15 days of service transfer. (*See generally* SAC). Nor would that be a **reasonable** inference from Second Amended Complaint's factual allegations. *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (A court need only draw "reasonable inferences" in plaintiff's favor when evaluating a Rule 12(b)(6) motion.). When the pleadings make "clear that [a proposed class definition] cannot be certified as defined, even after discovery," dismissing the class allegations is appropriate. *Rosedale v. CarChex, LLC*, 2020 WL 998740, at *4–5 (D. Md. Mar. 2, 2020). That is what this Court should do here, without leave to amend.[6]

## CONCLUSION

WHEREFORE, for the foregoing reasons, NewRez, LLC d/b/a/ Shellpoint Mortgaging Services respectfully requests this Court dismiss Plaintiff's Second Amended and Supplemental Class Action Complaint with prejudice, strike all class allegations, and grant such further relief as is just and equitable.

---

[6] Shellpoint explained in its Memorandum that this case is simply not an appropriate candidate for class treatment at any juncture. (Mem. at 34). None of Plaintiff's arguments have meaningfully rebutted this reality.

Dated: May 24, 2021                  Respectfully Submitted,

                                /s/ Andrew J. Narod
Andrew J. Narod (Federal Bar. No. 29738)
T. Sky Woodward (Federal Bar No. 10823)
Joshua Dhyani (Federal Bar No. 19929)
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, N.W., Suite 1350
Washington, DC 20036
Tel: (202) 719-8271
Fax: (202) 719-8371
E-mail: anarod@bradley.com
E-mail: swoodward@bradley.com
E-mail: jdhyani@bradley.com

*Counsel for Defendant*
*NewRez, LLC d/b/a Shellpoint Mortgage Servicing*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of May, 2021, a true and correct copy of the foregoing was filed using the CM/ECF system, which will then send a notification of such filing to the following:

Phillip R. Robinson, Esq.
Consumer Law Center, LLC
10125 Colesville Road, Ste. 378
Silver Spring, MD 20910
*Attorney for Plaintiff*

/s/ Andrew J. Narod
Andrew J. Narod (Federal Bar No. 29738)

22